Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
04/08/2016 09:05 AM CDT

STATE OF NEBRASKA, APPELLEE, V.
DAUNTE L. GOYNES, APPELLANT.
___ N.W.2d ___

Filed April 8, 2016.    No. S-15-352.

1. **Statutes: Appeal and Error.** Statutory interpretation presents a question of law, for which an appellate court has an obligation to reach an independent conclusion irrespective of the determination made by the court below.

2. **Postconviction: Constitutional Law: Proof.** A court must grant an evidentiary hearing to resolve the claims in a postconviction motion when the motion contains factual allegations which, if proved, constitute an infringement of the defendant's rights under the Nebraska or federal Constitution.

3. **Postconviction: Proof.** If a postconviction motion alleges only conclusions of fact or law, or if the records and files in the case affirmatively show that the defendant is entitled to no relief, the court is not required to grant an evidentiary hearing.

4. **Statutes: Legislature: Intent: Appeal and Error.** An appellate court gives statutory language its plain and ordinary meaning, and the court will not look beyond the statute to determine legislative intent when the words are plain, direct, and unambiguous.

5. **Statutes: Legislature: Intent.** In reading a statute, a court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense.

6. **Statutes.** It is not within the province of a court to read a meaning into a statute that is not warranted by the language; neither is it within the province of a court to read anything plain, direct, or unambiguous out of a statute.

7. **Postconviction.** States are not obligated to provide a postconviction relief procedure.

Appeal from the District Court for Douglas County: Marlon A. Polk, Judge. Affirmed.

Daunte L. Goynes, pro se.

Douglas J. Peterson, Attorney General, and Nathan A. Liss for appellee.

Heavican, C.J., Wright, Connolly, Miller-Lerman, Cassel, and Stacy, JJ.

Miller-Lerman, J.

## NATURE OF CASE

Daunte L. Goynes was convicted of murder in the second degree and use of a deadly weapon to commit a felony for the death of Aaron Lofton. Goynes was sentenced to imprisonment for a term of 60 years to life for the murder conviction and a term of 10 to 20 years for the weapon conviction, to be served consecutively. On direct appeal, we affirmed Goynes' convictions and sentences. See *State v. Goynes*, 278 Neb. 230, 768 N.W.2d 458 (2009).

On August 27, 2012, Goynes filed his first motion for postconviction relief, which the district court for Douglas County denied. On August 28, 2013, we dismissed his appeal to this court in case No. S-13-464.

On February 5, 2015, Goynes filed a second motion for postconviction relief, which the district court denied without holding an evidentiary hearing. The district court thereafter denied Goynes' motion to alter or amend. Goynes appeals. We determine that Goynes' second motion for postconviction relief was barred by the limitation period set forth in the Nebraska Postconviction Act, Neb. Rev. Stat. § 29-3001 et seq. (Reissue 2008 & Cum. Supp. 2014), and therefore, we affirm the district court's order denying Goynes' second motion for postconviction relief.

STATEMENT OF FACTS

The events underlying Goynes' convictions and sentences involve the shooting death of Lofton. The shooting occurred in February 2007, on the day before Goynes turned 18 years old. In our opinion on direct appeal, we set forth the facts of the case in detail. See *State v. Goynes, supra*.

After a trial, the jury found Goynes guilty of murder in the second degree and use of a deadly weapon to commit a felony. Goynes was sentenced to imprisonment for a term of 60 years to life for the murder conviction and a term of 10 to 20 years for the weapon conviction, to be served consecutively.

Goynes had the same counsel at trial and on direct appeal. Goynes assigned two errors on direct appeal, generally arguing that the trial court erred when it excluded certain evidence and when it denied his motion for a new trial. In our opinion on direct appeal, we found no merit to Goynes' assignments of error and affirmed his convictions and sentences. See *State v. Goynes, supra*.

On August 27, 2012, Goynes filed his first motion for postconviction relief, claiming that his counsel at trial and on appeal was ineffective for various reasons. In his first motion for postconviction relief, Goynes did not allege that his sentence was unconstitutional pursuant to *Miller v. Alabama*, ___ U.S. ___, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012), which had been decided within the year preceding the filing of his first motion for postconviction relief.

On January 23, 2013, the district court filed an order in which it denied Goynes' first postconviction motion without holding an evidentiary hearing. On August 28, 2013, his appeal to this court was dismissed in case No. S-13-464.

On February 5, 2015, Goynes filed his second motion for postconviction relief. This is the motion at issue in this appeal. In his second motion for postconviction relief, Goynes claimed that his constitutional right to be free from cruel or unusual punishment was violated because the sentencing court failed to hold an individualized hearing regarding possible

mitigating factors based on his juvenile status and because he received the functional equivalent of a life sentence without parole. Goynes further alleged that his constitutional rights to effective counsel and due process were violated because his attorney failed to request, and the trial court failed to give, a jury instruction regarding Goynes' culpability to commit second degree murder because of his juvenile status and mental and emotional development at the time of the crime. On appeal, Goynes has abandoned his claims with respect to the jury instructions.

On February 17, 2015, the district court filed an order in which it denied Goynes' second motion for postconviction relief without conducting an evidentiary hearing. The district court determined that Goynes' motion was barred by the limitation period found in the Nebraska Postconviction Act, § 29-3001(4), which provides:

A one-year period of limitation shall apply to the filing of a verified motion for postconviction relief. The one-year limitation period shall run from the later of:

(a) The date the judgment of conviction became final by the conclusion of a direct appeal or the expiration of the time for filing a direct appeal;

(b) The date on which the factual predicate of the constitutional claim or claims alleged could have been discovered through the exercise of due diligence;

(c) The date on which an impediment created by state action, in violation of the Constitution of the United States or the Constitution of Nebraska or any law of this state, is removed, if the prisoner was prevented from filing a verified motion by such state action;

(d) The date on which a constitutional claim asserted was initially recognized by the Supreme Court of the United States or the Nebraska Supreme Court, if the newly recognized right has been made applicable retroactively to cases on postconviction collateral review; or

(e) August 27, 2011.

The district court noted that Goynes was sentenced on July 2, 2008, and that his convictions were affirmed by this court on July 31, 2009. See *State v. Goynes*, 278 Neb. 230, 768 N.W.2d 458 (2009). The district court reasoned that § 29-3001(4)(e) applied and that Goynes had 1 year from August 27, 2011, to file his postconviction motion. The court determined that because Goynes filed his second motion for postconviction relief on February 5, 2015, his second motion was barred by the August 27, 2011, deadline contained in § 29-3001(4)(e). Alternatively, the district court determined that Goynes' second motion for postconviction relief was procedurally barred as a successive motion, because Goynes' claims were known or knowable at the time of his first postconviction proceeding.

On February 27, 2015, Goynes filed a motion to alter or amend in which he contended that his second motion for postconviction relief was not untimely or barred as a successive motion, because he was asserting a constitutional claim filed within 1 year of recognition of a new right. See § 29-3001(4)(d). Goynes asserted he was relying on new case law from *Miller v. Alabama*, ___ U.S. ___, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012), which was filed on June 25, 2012, and *State v. Mantich*, 287 Neb. 320, 842 N.W.2d 716 (2014), which was filed February 7, 2014. In *Miller*, the U.S. Supreme Court held that it is unconstitutional to sentence a juvenile who was younger than 18 years old at the time of the homicide to a mandatory sentence of life imprisonment without the possibility of parole. In *Mantich*, we held that the rule in *Miller* should be applied retroactively to collateral proceedings. In his motion to alter or amend, Goynes argued that his second postconviction motion was timely pursuant to § 29-3001(4)(d), because it was filed on February 5, 2015, which was within 1 year after *Mantich* was filed on February 7, 2014. Goynes further argued that his second postconviction motion should not be barred as a successive motion, because

*Mantich* was not filed until after his first postconviction proceeding had concluded.

On March 23, 2015, the district court filed an order in which it denied Goynes' motion to alter or amend. The court reasoned that Goynes' second motion for postconviction relief "never makes any reference to *Mantich*" and that in any event, *Miller* and *Mantich* "are not applicable to the case at hand, because [Goynes] did not receive a mandatory life sentence without the consideration of parole."

Goynes appeals.

## ASSIGNMENT OF ERROR

Goynes assigns, restated, that the district court erred when it denied his motion for postconviction relief without holding an evidentiary hearing on his claim that his constitutional right to be free from cruel and unusual punishment was violated when he received "a sentence of the functional equivalent of life for an offense [Goynes] committed when [Goynes] was a juvenile."

## STANDARD OF REVIEW

[1] Statutory interpretation presents a question of law, for which an appellate court has an obligation to reach an independent conclusion irrespective of the determination made by the court below. *State v. Irish*, 292 Neb. 513, 873 N.W.2d 161 (2016).

## ANALYSIS

Goynes generally claims that the district court erred when it denied his second motion for postconviction relief without holding an evidentiary hearing. Specifically, Goynes asserts that his motion should have been granted or that at least the court should have conducted an evidentiary hearing on his motion, because his constitutional right to be free from cruel and unusual punishment was violated when he received a sentence that is the functional equivalent to life for a crime that he committed when he was under the age of 18. Although our

reasoning differs from that of the district court, for the reasons set forth below, we determine that the district court did not err when it found Goynes' motion time barred and denied Goynes' second motion for postconviction relief.

[2,3] A court must grant an evidentiary hearing to resolve the claims in a postconviction motion when the motion contains factual allegations which, if proved, constitute an infringement of the defendant's rights under the Nebraska or federal Constitution. *State v. DeJong*, 292 Neb. 305, 872 N.W.2d 275 (2015). If a postconviction motion alleges only conclusions of fact or law, or if the records and files in the case affirmatively show that the defendant is entitled to no relief, the court is not required to grant an evidentiary hearing. *Id*.

In this case, Goynes, who was 17 years old at the time of the crime, was convicted of second degree murder and use of a deadly weapon to commit a felony. He was sentenced to imprisonment for a term of 60 years to life for the murder conviction and a consecutive term of 10 to 20 years for the weapon conviction. Relying on *Miller v. Alabama*, ___ U.S. ___, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012), Goynes asserts that his cumulative sentence of imprisonment of 70 years to life violates his right to be free from cruel and unusual punishment. "In *Miller v. Alabama*, [*supra*], the Court held that a juvenile convicted of a homicide offense could not be sentenced to life in prison without parole absent consideration of the juvenile's special circumstances in light of the principles and purposes of juvenile sentencing." *Montgomery v. Louisiana*, ___ U.S. ___, 136 S. Ct. 718, 725, 193 L. Ed. 2d 599 (2016). *Miller* further "held that mandatory life without parole for juvenile homicide offenders violates the Eighth Amendment's prohibition on '"cruel and unusual punishments."'" *Montgomery v. Louisiana*, 136 S. Ct. at 726, quoting *Miller v. Alabama, supra*.

On appeal, the State contends that *Miller* does not apply and that Goynes is not entitled to relief, because neither second degree murder nor use of a deadly weapon are mandatorily

punishable by a sentence of life imprisonment without parole. See Neb. Rev. Stat. §§ 28-304, 28-1205(2)(b), and 28-105 (Reissue 2008 & Cum. Supp. 2014). And Goynes will be eligible for parole. See Neb. Rev. Stat. § 83-1,110 (Reissue 2014). Goynes acknowledges that he was not sentenced to life in prison without the possibility of parole; however, he nevertheless urges us to adopt and apply the sentencing process announced in *Miller* to lengthy term-of-years sentences imposed on juveniles, such as his sentence. Because we determine that Goynes' second motion for postconviction relief asserts a constitutional claim initially recognized in *Miller*, it is barred by the limitation period set forth in § 29-3001(4)(d), and it is unnecessary for us to decide whether *Miller* applies, or if it does, the extent of the cases and sentences to which the *Miller* individualized sentencing principles apply.

The statutory limitation periods regarding postconviction motions are found at § 29-3001(4) and provide that a 1-year limitation period applies to the filing of a motion for postconviction relief and that such period begins to run on the later of one of five dates. Section § 29-3001(4) controls the outcome of this case and provides:

A one-year period of limitation shall apply to the filing of a verified motion for postconviction relief. The one-year limitation period shall run from the later of:

. . . .

(d) The date on which a constitutional claim asserted was initially recognized by the Supreme Court of the United States or the Nebraska Supreme Court, if the newly recognized right has been made applicable retroactively to cases on postconviction collateral review[.]

[4-6] In interpreting § 29-3001(4)(d), we set forth some familiar principles of statutory interpretation. We give statutory language its plain and ordinary meaning, and we will not look beyond the statute to determine legislative intent when the words are plain, direct, and unambiguous. *State v. Hansen*, 289 Neb. 478, 855 N.W.2d 777 (2014). In reading a statute, a

court must determine and give effect to the purpose and intent of the Legislature as ascertained from the entire language of the statute considered in its plain, ordinary, and popular sense. *State v. Mucia*, 292 Neb. 1, 871 N.W.2d 221 (2015). It is not within the province of a court to read a meaning into a statute that is not warranted by the language; neither is it within the province of a court to read anything plain, direct, or unambiguous out of a statute. *State v. Warriner*, 267 Neb. 424, 675 N.W.2d 112 (2004). Statutory interpretation presents a question of law, which an appellate court reviews independently of the lower court's determination. *State v. Carman*, 292 Neb. 207, 872 N.W.2d 559 (2015).

According to Goynes, the claim he asserts in his second postconviction motion filed February 5, 2015, seeks individualized sentencing based on *Miller*, which was decided on June 25, 2012, and found to be retroactive on collateral review in our case of *State v. Mantich*, 287 Neb. 320, 842 N.W.2d 716 (2014), filed February 7, 2014, and the U.S. Supreme Court case of *Montgomery v. Louisiana*, ___ U.S. ___, 136 S. Ct. 718, 193 L. Ed. 2d 599 (2016), filed January 25, 2016. The issue before us is whether Nebraska's postconviction statute is available to Goynes to adjudicate his claim asserted under the U.S. Supreme Court case of *Miller*.

To determine the postconviction limitation period applicable to this case, we look to the plain language of § 29-3001(4). The introductory language of § 29-3001(4) provides that "[a] one-year period of limitation shall apply to the filing of a verified motion for postconviction relief." And the core provision of § 29-3001(4), which, as noted, controls the outcome in this case, provides that "[t]he one-year limitation period shall run from . . . . (d) [*t*]*he date on which* a constitutional claim asserted was *initially recognized* by the Supreme Court of the United States . . . ." (Emphasis supplied.) The availability of relief under § 29-3001(4)(d) is limited to "newly recognized right[s which have] been made applicable retroactively to cases on postconviction collateral review."

The newly recognized right at issue in this case, initially recognized by the U.S. Supreme Court in *Miller v. Alabama*, ___ U.S.___, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012), is that a juvenile convicted of a homicide offense cannot be sentenced to life imprisonment without parole without consideration of the juvenile's special circumstances at sentencing. *Miller* was decided on June 25, 2012. Accordingly, pursuant to the plain language of § 29-3001(4)(d), Goynes had 1 year from June 25, 2012, to file a postconviction motion asserting his constitutional claim based on this newly recognized right. In fact, Goynes filed his first postconviction motion within 1 year after the *Miller* decision, but asserted no claims based on *Miller*. Goynes did not file the instant second postconviction motion based on rights recognized in *Miller* until February 5, 2015, which was outside the 1-year limitation period set forth in § 29-3001(4)(d). Therefore, his motion was barred by § 29-3001(4)(d) as untimely and the district court did not err when it found Goynes' second motion for postconviction relief untimely and denied the motion.

For completeness, we note that Goynes argues that the 1-year period for filing his second postconviction motion should not have begun until our decision in *Mantich* finding retroactivity was filed. Goynes asserts that his second motion for postconviction relief, which was filed within the year after *Mantich*, was timely. We reject Goynes' argument. Goynes' assertion is not consistent with the plain language of § 29-3001(4), which provides that the "one-year limitation period shall run from . . . (d) [t]he date on which the constitutional *claim asserted was initially* recognized." (Emphasis supplied.) Goynes' *Miller* claim was initially recognized in 2012. Further, to the extent the language in our opinion in *State v. Wetherell*, 289 Neb. 312, 855 N.W.2d 359 (2014), suggests that day one is a retroactivity decision, it is disapproved.

Our reading of the limitation period in § 29-3001(4)(d) is consistent with the U.S. Supreme Court's reading of the

comparable limitation period found at 28 U.S.C. § 2255(f)(3) (2012), formerly codified at 28 U.S.C. § 2255, ¶ 6(3) (2006). See *Dodd v. United States*, 545 U.S. 353, 125 S. Ct. 2478, 162 L. Ed. 2d 343 (2005). Section 2255 establishes a "1-year period of limitation" within which a federal prisoner may file a motion to vacate, set aside, or correct his or her sentence under that section. Specifically, § 2255(f) provides:

A 1-year period of limitation shall apply to a motion under this section [§ 2255]. The limitation period shall run from the latest of—

. . . .

(3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review[.]

In *Dodd*, the petitioner argued that the limitation period did not begin to run until the right at issue had been found to apply retroactively to cases on collateral review. The Government argued that the limitation period began to run on the date the U.S. Supreme Court initially recognized the right, a position with which the Court of Appeals for the 11th Circuit and the U.S. Supreme Court agreed. *Dodd v. United States, supra*; *Dodd v. U.S.*, 365 F.3d 1273 (11th Cir. 2004).

In affirming the decision of the 11th Circuit, the Court stated:

We believe that the text of [§ 2255(f)(3)] settles this dispute. It unequivocally identifies one, and only one, date from which the 1-year limitation period is measured: "the date on which the right asserted was initially recognized by the Supreme Court." We "must presume that [the] legislature says in a statute what it means and means in a statute what it says there." *Connecticut Nat. Bank* v. *Germain*, 503 U.S. 249, 253-254[, 112 S. Ct. 1146, 117 L. Ed. 2d 391] (1992). What Congress has said in [§ 2255(f)(3)] is clear: An applicant has one year from the

date on which the right he asserts was initially recognized
by this Court.

*Dodd v. United States*, 545 U.S. at 357.

In *Dodd*, the Court made clear that the second clause—
"'if that right has been newly recognized by the Supreme
Court and made retroactively applicable to cases on col-
lateral review'—imposes a condition on the applicability of
this subsection." 545 U.S. at 358. *Dodd* continues: "As long
as the conditions in the second clause are satisfied so that
[§ 2255(f)(3)] applies in the first place, that [second] clause
has no impact whatsoever on the date from which the 1-year
limitation period . . . begins to run." *Id*. In *Dodd*, the Court
recognized it was a legislative decision that § 2255(f)(3)
established "'stringent procedural requirements for retroac-
tive application of new rules'" on collateral review and that
the Court did "'not have license to question the decision
on policy grounds.'" 545 U.S. at 359. The same reasoning
applies to our reading of the limitation period set by the
Legislature in the Nebraska Postconviction Act found at
§ 29-3001(4)(d).

[7] It is well recognized that states are not obligated to
provide a postconviction relief procedure. *State v. Lotter*,
278 Neb. 466, 771 N.W.2d 551 (2009). See, also, *Murray
v. Giarratano*, 492 U.S. 1, 10, 109 S. Ct. 2765, 106 L. Ed.
2d 1 (1989) (stating that "[s]tate collateral proceedings are
not constitutionally required as an adjunct to the state crimi-
nal proceeding and serve a more limited purpose than either
the trial or appeal"). In a concurring opinion in *Giarratano*,
Justice O'Connor observed that "[a] postconviction proceed-
ing is not a part of the criminal process itself, but is instead a
civil action designed to overturn a presumptively valid crimi-
nal judgment" and is not constitutionally required. 492 U.S.
at 13 (O'Connor, J., concurring). Nevertheless, the Nebraska
Postconviction Act provides a defendant in custody with a civil
procedure by which a defendant can present a motion alleg-
ing "there was such a denial or infringement of the rights of

the prisoner as to render the judgment void or voidable under the Constitution of this state or the Constitution of the United States." § 29-3001(2). But the collateral procedure has limitations, and as noted above, § 29-3001(4) places a 1-year period of limitation on the filing for relief.

With respect to state statutes regarding postconviction review, we agree with the Missouri Supreme Court which has stated:

> States have substantial discretion to develop and implement programs for prisoners seeking post-conviction review. *Pennsylvania v. Finley*, 481 U.S. 551, 559, 107 S.Ct. 1990, 1995, 95 L.Ed.2d 539 (1987). A state may erect reasonable procedural requirements for triggering the right to an adjudication, *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 437, 102 S.Ct. 1148, 1158, 71 L.Ed.2d 265 (1982), including reasonable procedures governing post-conviction relief. *Wiglesworth v. Wyrick*, 531 S.W.2d 713, 717 (Mo. banc 1976).

*Day v. State*, 770 S.W.2d 692, 695 (Mo. 1989) (en banc). See, also, 39 Am. Jur. 2d *Habeas Corpus* § 179 at 394 (2008) (stating that "[l]imitation periods for seeking postconviction relief are generally set by statute. Such limitations have withstood constitutional challenge, even in death penalty cases"). Our research is in accord.

We are mindful that our determination that Goynes' second motion for postconviction relief based on his rights under *Miller v. Alabama*, ___ U.S. ___, 132 S. Ct. 2455, 183 L. Ed. 2d 407 (2012), is untimely under the Nebraska Postconviction Act, will prevent Goynes from availing himself of this collateral remedy. And we are aware of the Court's recent statement that "when a new substantive rule of constitutional law controls the outcome of a case, the Constitution requires state collateral review courts to give retroactive effect to that rule." *Montgomery v. Louisiana*, ___ U.S. ___, 136 S. Ct. 718, 729, 193 L. Ed. 2d 599 (2016). Nevertheless, we believe our decision is in harmony with the holding in *Montgomery*, because

we have decided only that the collateral remedy Goynes invokes in this case is not available because it is not properly presented, but not because we would decline to give effect to a constitutional right if properly before us.

In this regard, we note that in *Montgomery*, the Court stated that "[*w*]*here state collateral review proceedings permit prisoners to challenge the lawfulness of their confinement*, States cannot refuse to give retroactive effect to a substantive constitutional right that determines the outcome of that challenge." 136 S. Ct. at 731-32 (emphasis supplied). And the Court further recognized that state collateral review may not be an available remedy when the Court stated that "[i]n adjudicating claims under its collateral review procedures a State may not deny a controlling right asserted under the Constitution, *assuming the claim is properly presented in the case*." 136 S. Ct. at 732 (emphasis supplied).

Pursuant to our state collateral review proceedings, namely the Nebraska Postconviction Act, Goynes was permitted to bring a postconviction motion setting forth his *Miller* claim. However, due to untimeliness under § 29-3001(4)(d), his second postconviction motion failed to properly present his claim, a potentiality recognized in *Montgomery*. In fact, Goynes could have raised his *Miller* claim in his first motion for postconviction relief, which was filed within 1 year after *Miller* was decided, but he did not do so. The Legislature has provided a postconviction procedure with its applicable time limitations. "Were we to recognize a common-law remedy for the purpose of asserting time-barred postconviction claims, we would be undermining the purpose of the Legislature in enacting § 29-3001(4)." *State v. Smith*, 288 Neb. 797, 803, 851 N.W.2d 665, 670 (2014).

In *Smith*, we indicated that a claim that a criminal sentence is void may be a ground for relief in the form of a writ of habeas corpus. And we are aware that it has been suggested that a claim alleging a sentence is cruel and unusual under *Miller* as a violation of the Eighth Amendment might

be brought as a federal habeas action. See *Montgomery v. Louisiana, supra* (Thomas, J., dissenting). In the present case, however, we determine only that Goynes' second motion for postconviction relief based on a *Miller* rights claim was not timely filed under § 29-3001(4)(d).

## CONCLUSION

We determine that Goynes' second motion for postconviction relief is barred as untimely under § 29-3001(4)(d), and therefore, we affirm the order of the district court which denied Goynes' second motion for postconviction relief without holding an evidentiary hearing.

Affirmed.

McCormack, J., not participating.