In the Supreme Court of Georgia

Decided: June 18, 2018

S18A0594. ABRAMS v. LAUGHLIN et al.

HINES, Chief Justice.

This Court granted prisoner Cardell Jerome Abrams's application for a certificate of probable cause to appeal the denial of his petition for a writ of habeas corpus, posing the question of whether the habeas court correctly dismissed the petition for failure to file within the time allowed by OCGA § 9-14-42 (c) (3).[1] For the reasons that follow, we affirm the judgment of the habeas court.

On October 17, 2005, Abrams was convicted of four counts of kidnapping, as well as other crimes, pursuant to a guilty plea, and he did not

---

[1] In his appellate brief, Abrams claims that the habeas court erred in hearing the motion to dismiss his petition as untimely without providing him with proper notice or adequate information about the nature of the hearing. That claim, however, is "outside the confines of this granted application for a certificate of probable cause to appeal," *Gonzalez v. Hart*, 297 Ga. 670, 672, n. 2 (777 SE2d 456) (2015), as we did not identify it "as having arguable merit in our order granting [Abrams's] application to appeal . . . , and further review of the record and briefs confirms that [the claim] lack[s] merit." *Hillman v. Johnson*, 297 Ga. 609, 615, n. 5 (774 SE2d 615) (2015). See also Georgia Supreme Court Rule 36.

seek direct review of any of his convictions. Acting pro se,[2] Abrams filed his

habeas petition on May 10, 2016, alleging that his kidnapping convictions were

not supported by sufficient evidence of asportation under *Garza v. State*, 284

Ga. 696 (670 SE2d 73) (2008).[3] On the State's motion,[4] the habeas court

dismissed the petition as untimely under OCGA § 9-14-42 (c) (1) and (3).

1. Subsection (c) of OCGA § 9-14-42[5] "provides for a period of

---

[2] After our grant of a certificate of probable cause to appeal, J. Scott Key, Kayci Nicole Dennis, and the Habeas Clinic at Mercer University began representing Abrams. We express our appreciation to counsel for their pro bono service and to the law students who have assisted them.

[3] Although the General Assembly abrogated *Garza* by enacting a new statutory definition of asportation in OCGA § 16-5-40 (b) (2), that statutory revision applies only to offenses committed on or after July 1, 2009. See Ga. L. 2009, p. 331; OCGA § 1-3-4 (a) (1); *Wilkerson v. Hart*, 294 Ga. 605, 607 (2) (755 SE2d 192) (2014); *Brower v. State*, 298 Ga. App. 699, 706 (2), n. 3 (680 SE2d 859) (2009).

[4] The named respondent, Vance Laughlin, is the person having custody of Abrams, see OCGA § 9-14-45, but only by virtue of Laughlin's employment with a private company that operates Abrams's prison pursuant to a contract with the Georgia Department of Corrections. For this reason, the habeas court granted a motion to intervene that was filed by Homer Bryson, the Commissioner of the Department of Corrections. The Attorney General represents only the intervenor, who, for the sake of simplicity, is referred to herein as "the State."

[5] OCGA § 9-14-42 (c) provides:

Any action brought pursuant to this article shall be filed within one year in the case of a misdemeanor, except as otherwise provided in Code Section 40-13-33, or within four years in the case of a felony, other than one challenging a conviction for which a death sentence has been imposed or challenging a sentence of death, from:

(1) The judgment of conviction becoming final by the conclusion of direct

2

limitations to seek a writ of habeas corpus in state court for the denial of a federal or state constitutional right. In the case of a felony other than one involving a death sentence, any action must be filed within four years from" one of four alternative dates. *State v. Sosa*, 291 Ga. 734, 735-736 (1) (733 SE2d 262) (2012). The time provided in paragraph (c) (1) begins to run upon "[t]he judgment becoming final by the conclusion of direct review or the expiration of the time for seeking such review." Abrams's kidnapping convictions became final when the time for appeal expired on November 16, 2005. See OCGA § 5-6-38 (a). Because he did not file his habeas petition within four years of that

review or the expiration of the time for seeking such review; provided, however, that any person whose conviction has become final as of July 1, 2004, regardless of the date of conviction, shall have until July 1, 2005, in the case of a misdemeanor or until July 1, 2008, in the case of a felony to bring an action pursuant to this Code section;

(2) The date on which an impediment to filing a petition which was created by state action in violation of the Constitution or laws of the United States or of this state is removed, if the petitioner was prevented from filing such state action;

(3) The date on which the right asserted was initially recognized by the Supreme Court of the United States or the Supreme Court of Georgia, if that right was newly recognized by said courts and made retroactively applicable to cases on collateral review; or

(4) The date on which the facts supporting the claims presented could have been discovered through the exercise of due diligence.

3

date, it was untimely under OCGA § 9-14-42 (c) (1) and subject to dismissal unless it was timely under another paragraph. Abrams has never claimed that paragraph (c) (2) is applicable. Indeed, there has been no showing of any "impediment" created by unconstitutional state action as required by that paragraph.

2. Under paragraph (c) (3) of OCGA § 9-14-42, the statute of limitation is tolled until "[t]he date on which the right asserted was initially recognized by the Supreme Court of the United States or the Supreme Court of Georgia, if that right was newly recognized by said courts and made retroactively applicable to cases on collateral review." This paragraph potentially applies to Abrams's habeas petition because the right that he asserts was initially recognized by *Garza*, was subsequently identified as a substantive right that should be applied retroactively, see *Hammond v. State*, 289 Ga. 142, 143-144 (1) (710 SE2d 124) (2011), and was thereafter applied retroactively to cases on collateral review, see *Wilkerson v. Hart*, 294 Ga. 605, 607 (2) (755 SE2d 192) (2014); *Chatman v. Brown*, 291 Ga. 785, n. 1 (733 SE2d 712) (2012). This raises the question of when the time provided pursuant to paragraph (c) (3) begins to run. Is it the date when the asserted right was initially recognized, when that right was made

4

retroactively applicable to cases on direct review, or when the right was made

retroactively applicable specifically to cases on collateral review?

The answer to this question depends on a proper interpretation of OCGA

§ 9-14-42 (c) (3).

> Pursuant to the rules of statutory construction, we presume that the General Assembly meant what it said and said what it meant. To that end, we must afford the statutory text its plain and ordinary meaning, we must view the statutory text in the context in which it appears, and we must read the statutory text in its most natural and reasonable way, as an ordinary speaker of the English language would. Applying these principles, if the statutory text is clear and unambiguous, we attribute to the statute its plain meaning, and our search for statutory meaning is at an end.

*Williams v. State*, 299 Ga. 632, 633 (791 SE2d 55) (2016) (citations and

quotation marks omitted). Furthermore, in construing a Georgia statute that

closely tracks federal statutory law, we may look to federal court decisions and

commentary interpreting the federal statute as persuasive authority. See *Bowden*

*v. The Medical Center*, 297 Ga. 285, 291 (2) (a), n. 5 (773 SE2d 692) (2015);

*ABCO Builders v. Progressive Plumbing*, 282 Ga. 308, 309 (647 SE2d 574)

(2007).

Examination of OCGA § 9-14-42 (c) shows that, except for providing a

time period of four years rather than one year, it conforms very closely to both

the one-year statute of limitation applicable to a federal habeas application by a person in custody pursuant to a state court judgment, 28 USC § 2244 (d) (1), and the one-year statute of limitation that applies to a motion to vacate, set aside, or correct a federal sentence, 28 USC § 2255 (f) (formerly codified as 28 USC § 2255, ¶ 6).  See *Whiteside v. United States*, 775 F3d 180, 183, n. 2 (4th Cir. 2014) ("The statute of limitations provisions . . . under 28 USC § 2244 (d) (1) (A)-(D) and 28 USC § 2255 (f) (1)-(4) are in all material respects identical."). The limitation period under each of those federal statutes runs from the latest of four dates that are virtually the same as the four specified in OCGA § 9-14-42 (c).  In particular, the period of limitation under 28 USC § 2255 (f) (3) runs from "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review."  The Supreme Court of the United States has determined that this text "unequivocally identifies one, and only one, date from which the 1-year limitation period is measured . . . .  What Congress has said . . . is clear: An applicant has one year from the date on which the right he asserts was initially recognized by this Court." *Dodd v. United States*, 545 U. S. 353, 357 (125 SCt 2478, 162 LE2d 343) (2005).  And one of

6

our sister states has recently relied on *Dodd* to interpret a nearly identical provision in the very same way. *State v. Goynes*, 876 NW2d 912, 919-920 (Neb. 2016).

Under the only natural reading of the text, 28 USC § 2255 (f) (3), like OCGA § 9-14-42 (c) (3), identifies in its first clause "*one date and one date only* as the date from which the . . . limitation period runs: 'the date on which the right asserted was initially recognized by the Supreme Court.'" *Dodd*, 545 U. S. at 358 (emphasis in original).[6] "In *Dodd*, the Court made clear that the second clause – "'if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review" – imposes a condition on the applicability of this subsection.'" *Goynes*, 876 NW2d at 920 (citation omitted). As the United States Supreme Court recognized, "the definition of 'if' is 'in the event that' or 'on condition that.'" *Dodd*, 545 U. S. at 358 (citing Webster's Third New International Dictionary 1124 (1993)). The second clause therefore limits the application of 28 USC § 2255 (f) (3) "to cases

---

[6] Even the dissenting Justices in *Dodd* agreed that this was "the most natural reading of the statutory text." Id. at 361. The dissenters read the statute differently to avoid what they called the "perverse result" it created due to the limitation period being only one year. Id. Georgia's four-year limitation period eliminates any such temptation to read OCGA § 9-14-42 (c) (3) unnaturally.

7

in which applicants are seeking to assert rights 'newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review.'" Id.

> *Dodd* continues: "As long as the conditions in the second clause are satisfied so that (§ 2255 (f) (3)) applies in the first place, that (second) clause has no impact whatsoever on the date from which the . . . limitation period . . . begins to run." In *Dodd*, the Court recognized it was a legislative decision that § 2255 (f) (3) established "'stringent procedural requirements for retroactive application of new rules'" on collateral review and that the Court did "'not have license to question the decision on policy grounds.'"

*Goynes*, 876 NW2d at 920 (citations omitted).

The same reasoning applies to our reading of the limitation period set by our General Assembly in OCGA § 9-14-42 (c) (3). See *Goynes*, 876 NW2d at 920. See also *Fullwood v. Sivley*, 271 Ga. 248, 249, 251 (517 SE2d 511) (1999) ("This Court is not at liberty 'to ignore jurisdictional and procedural statutes and rules, and to change its role from disinterested decision-maker' . . . . Habeas corpus is a civil, not a criminal, remedy. Moreover, the fact that habeas corpus has been called an 'equitable' remedy does not authorize a court to ignore the body of statutes, rules, and precedents governing its issuance. Equity cannot supersede the positive enactments of the General Assembly." (citations

8

omitted)).  Consequently, if this Court decides a case recognizing a new right, a convicted felon not sentenced to death seeking to assert that right will have four years from this Court's decision within which to file his habeas petition, and "[h]e may take advantage of the date in the first clause of [OCGA § 9-14-42 (c) (3)] only if the conditions in the second clause are met." *Dodd*, 545 U. S. at 359.  In this case, therefore, because the right asserted by Abrams was "newly recognized" in *Garza*, Abrams had four years from the date of the *Garza* decision, November 3, 2008, to file his habeas petition even though the *Garza* right was subsequently "made retroactively applicable to cases on collateral review."  As Abrams's petition had to be filed no later than November 3, 2012 and it was not filed until May 10, 2016, it was not timely under paragraph (c) (3) of OCGA § 9-14-42.

3.  Paragraph (c) (4) of OCGA § 9-14-42 provides that the statute of limitation is tolled until "[t]he date on which the facts supporting the claims presented could have been discovered through the exercise of due diligence." Abrams argued below that, as a pro se litigant, he did not know about *Garza*, but filed his habeas petition as soon as he heard about the change in the law of

9

kidnapping in that case.[7]  In the briefs filed in this Court on Abrams's behalf, his new appellate attorneys have expressly relied on paragraph (c) (4), contending that Abrams filed his habeas petition within four years of his discovery of the violation of his legal rights based upon the exercise of due diligence.  Assuming that Abrams sufficiently raised that contention, it is without merit because the time provided in paragraph (c) (4) plainly begins to run on the date when "the *facts* supporting the claims presented" (emphasis supplied), *not* "the law," could have been discovered by due diligence.

Like paragraph (c) (3), paragraph (c) (4) has nearly identical federal counterparts.  The period of limitation under 28 USC § 2255 (f) (4) begins to run on "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence."  And the time under 28 USC § 2244 (d) (1) (D) runs from "the date on which the factual

---

[7] In his habeas petition, Abrams alleged that he had been unaware of the illegality or unconstitutionality of his convictions under the kidnapping statute.  In his brief in support of his habeas petition and in his written response to the State's motion to dismiss, Abrams indicated that it was his first opportunity to challenge the validity of his kidnapping convictions under *Garza*.  At the hearing on the motion to dismiss, Abrams argued that he did not have knowledge of the law and its change in 2008, and that when he heard about that change, he promptly sought to vacate his kidnapping convictions.  In his application to this Court for a certificate of probable cause, Abrams reiterated his argument that he had never had an opportunity to challenge his kidnapping convictions based on the claim newly recognized in *Garza*.

10

predicate of the claim or claims presented could have been discovered through the exercise of due diligence." These two federal provisions are "almost identical" and have been interpreted by the United States Supreme Court "in concert with one another." *Shannon v. Newland*, 410 F3d 1083, 1088 (9th Cir. 2005). The federal circuits that have considered the issue have uniformly concluded that an intervening change in law does not amount to a new supporting fact or factual predicate that is sufficient to reset the limitation period under 28 USC § 2244 (d) (1) (D) or § 2255 (f) (4). *Whiteside*, 775 F3d at 183. See also Brian R. Means, Postconviction Remedies § 25:16 (June 2017 Update); Brian R. Means, Federal Habeas Manual § 9A:36 (May 2017 Update). "A decision establishing an abstract proposition of law arguably helpful to the petitioner's claim does not constitute the factual predicate for that claim. Decisions that change the legal significance of certain facts without modifying them do not qualify under (f) (4)." *Whiteside*, 775 F3d at 184 (citation and quotation marks omitted). See also id. at 183 (distinguishing *Johnson v. United States*, 544 U. S. 295 (125 SCt 1571, 161 LE2d 542) (2005), because it involved the vacatur of a prior state conviction that had been used for enhanced sentencing, which meant that the vacatur was a new fact for purposes of 28 USC

11

§ 2255 (f) (4), not a relevant legal ruling "'exclusively within the domain of the courts and . . . incapable of being proved or disproved'" (citation omitted)); *Shannon*, 410 F3d at 1089 (observing that the language of both the majority and the dissent in *Johnson* "suggests that a state-court decision establishing an abstract proposition of law arguably helpful to the petitioner's claim does not constitute the 'factual predicate' for that claim").

To construe OCGA § 9-14-42 (c) (4) differently would not only belie the plain meaning of that paragraph, it would effectively nullify paragraph (c) (3).

> If changes in law are cognizable under [(c)] (4), then [(c)] (3) becomes superfluous because any claim brought under [(c)] (3) could also be brought under [(c)] (4). To suggest . . . that any decision by any court on any issue could constitute a factual predicate would swallow up the specifically delineated limitations in [(c)] (3). These considerations indicate that subsequent interpretations of the law can be the basis of delay in filing a . . . [habeas petition] only in accordance with [OCGA § 9-14-42 (c)] (3) – not [(c)] (4). In other words, [a contrary interpretation] would render the statute of limitations virtually without limits. [Again, Abrams] does not even attempt to argue that his claim satisfies the requirements specified in [(c)] (3).

*Whiteside*, 775 F3d at 184 (construing 28 USC § 2255 (f) (4) in light of § 2255 (f) (3)) (citations and quotation marks omitted). See also *Shannon*, 410 F3d at 1088 ("If a change in (or clarification of) state law, by a state court, in a case in

12

which [the petitioner] was not a party, could qualify as a 'factual predicate,' then the term 'factual' would be meaningless.").

In his argument regarding OCGA § 9-14-42 (c) (4), Abrams relies wholly on his discovery of *Garza*, a case to which he was not a party. *Garza* "established new factors for assessing the asportation element of Georgia's pre-2009 kidnapping statute" and "constituted a substantive change in the law with respect to the elements of kidnapping." *Gonzalez v. Hart*, 297 Ga. 670, 672 & n. 3 (777 SE2d 456) (2015). It "announced a new substantive rule of criminal law." *Williams v. State*, 291 Ga. 501, 502 (1) (b), n. 2 (732 SE2d 47) (2012). Thus, *Garza* "represented a change of law, not fact. . . . Instead of altering the factual landscape, [it] announced a generally applicable legal rule." *Whiteside*, 775 F3d at 183-184. See also *Shannon*, 410 F3d at 1088 (explaining that the prior decision relied on by a habeas petitioner "clarified the law, not the facts"). As a result, *Garza* does not constitute a "fact" that can reset the statute of limitation under paragraph (c) (4) of OCGA § 9-14-42. Because Abrams's habeas petition was not timely pursuant to any of the alternative paragraphs of the statute of limitation in OCGA § 9-14-42 (c), the habeas court correctly dismissed the petition as untimely.

Judgment affirmed. All the Justices concur.