IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
March 19, 2019 Session

**JAMES ELLISON ROUSE v. STATE OF TENNESSEE**

**Appeal from the Circuit Court for Maury County**
**No. 9575     David L. Allen, Judge**

_____

**No. M2018-00926-CCA-R3-PC**

_____

The Petitioner, James Ellison Rouse, appeals the Maury County Circuit Court's denial of his petition for post-conviction relief from his two convictions of first degree murder and two convictions of attempted first degree murder and resulting effective sentence of two terms of life without the possibility of parole plus forty-two years. The post-conviction court ruled that the petition was time-barred. On appeal, the Petitioner contends that his petition was timely because he filed it within one year of Montgomery v. Louisiana, 136 S. Ct. 718 (2016), and Jacob Brown v. State, No. W2015-00887-CCA-R3-PC, 2016 WL 1562981 (Tenn. Crim. App. at Jackson, Apr. 15, 2016). Based upon the oral arguments, the record, and the parties' briefs, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and J. ROSS DYER, JJ., joined.

Jake Hubbell, Columbia, Tennessee, for the appellant, James Ellison Rouse.

Herbert H. Slatery III, Attorney General and Reporter; Leslie E. Price, Senior Assistant Attorney General; Brent A. Cooper, District Attorney General; and Caleb Bayless, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I.  Factual Background**

In November 1997, a Maury County Circuit Court Jury convicted the Petitioner of two counts of first degree murder and two counts of attempted first degree murder. On direct appeal of the Petitioner's convictions, this court gave the following account of the crimes:

On November 15, 1995, Jamie Rouse, the defendant, then seventeen and a high school senior, walked into Richland High School, in Giles County, at the beginning of the school day, armed with a .22 caliber rifle. The defendant was driven to school that day by co-defendant Stephen Abbott.

Once inside Richland High School, the defendant walked down the north hallway. He stopped some two feet from his first victim, raised his rifle to his shoulder, aimed it at teacher Carol Yancey's head, and pulled the trigger. The rifle did not fire, so he cocked it again, took aim, and shot Carol Yancey in the head. She fell to the floor seriously wounded.

He then immediately shot teacher Carolyn Foster, who was standing beside Carol Yancey. Carolyn Foster died as a result of her wound. The defendant then lowered his rifle, smiled at a fellow student, and walked calmly down the crowded hallway. He again took aim, this time intending to shoot Coach Ron Shirey. He fired down the hallway and struck his third victim, Diane Collins, a fourteen year-old fellow student. Diane Collins died as a result of being shot in the neck.

James Nichols, a teacher, was very close to the defendant when the defendant shot and killed Diane Collins. Unaware of whether anyone had been hit, Nichols immediately grabbed for the rifle and demanded that the defendant give it to him. Nichols and the defendant began to struggle over the rifle and once again the rifle fired into the crowded hallway. Fortunately, this shot entered the ceiling. During the struggle, the defendant resisted all of Nichol's efforts to remove the rifle from him, saying, "I can't. I went too far." Ralph Johnson, a teacher, and two students helped Nichols subdue and disarm the defendant.

State v. James Ellison Rouse, No. M1999-01807-CCA-R3-CD, 2000 WL 1133682, at *1 (Tenn. Crim. App. at Nashville, Aug. 10, 2000).

In addition to the evidence presented above, two expert witnesses testified for the Petitioner that he was suffering from paranoid schizophrenia at the time of the shootings. See id. at *5. On rebuttal, the State presented its own experts, who testified that the Petitioner "was not suffering from any major mental illness at the time of the offense[s] that would have rendered him incapable of controlling or understanding his actions." Id. The jury accredited the State's expert witnesses and convicted the Petitioner as charged. Id.

Subsequently, the trial court held a separate sentencing hearing pursuant to Tennessee Code Annotated section 39-13-207(a), which provides that the jury shall determine the defendant's punishment in a first degree murder case when the State does not seek the death penalty but seeks life without the possibility of parole. See id. at *2. During the hearing, the State presented three witnesses. Id. at *3. The Petitioner presented eight witnesses, including his parents. Id. at *4. The Petitioner's school records were introduced into evidence through a guidance counselor from his high school, and the records showed that he was "on track" to graduate at the time of the shootings. Id. On cross-examination by the State, the guidance counselor testified that neither the Petitioner nor his family ever requested psychiatric or psychological testing or intervention for him. Id. An employee at the Rutherford Juvenile Detention Center, where the Petitioner was housed before trial, testified for him that "he prayed very frequently, was generally remorseful, and had purchased, on his own accord, a case of Bibles for the Center." Id. A therapist from Middle Tennessee Mental Health Institute testified that the Petitioner was very remorseful and suffered from suicidal ideation and depression. Id.

At the conclusion of the hearing, the jury found the following aggravating circumstance applicable to the first degree murders of Carolyn Foster and Diane Collins pursuant to Tennessee Code Annotated section 39-13-204(i)(3): that "[t]he defendant knowingly created a great risk of death to two (2) or more persons, other than the victim murdered, during the act of murder." See id. at *4. The jury also found the following aggravating circumstance applicable to the first degree murder of Carolyn Foster pursuant to Tennessee Code Annotated section 39-13-204(i)(7): that "[t]he murder was knowingly committed . . . while the defendant had a substantial role in committing or attempting to commit . . . any first degree murder." See id. Accordingly, the jury imposed sentences of life without the possibility of parole for both convictions. Id. The trial court then conducted its own sentencing hearing and sentenced the Petitioner to twenty-five years for each attempted first degree murder conviction and ordered that the Petitioner serve all of the sentences consecutively for a total effective sentence of two terms of life without the possibility of parole plus fifty years. See id. at *6.

On appeal of his convictions to this court, the Petitioner challenged only the sentences imposed. Id. at *2. This court affirmed the Petitioner's two sentences of life without the possibility of parole and the trial court's ordering consecutive sentencing, noting that "as this crime and its impact on the families and the community were most severe, upon a finding of guilt, only a severe and lengthy punishment would be appropriate." Id. at *8. However, this court modified the Petitioner's twenty-five-year sentences to twenty-one-years, resulting in a total effective sentence of two terms of life without parole plus forty-two years. Id.

- 3 -

Our supreme court denied the Petitioner's application for permission to appeal on February 26, 2001. More than fifteen years later, on December 12, 2016, he filed a petition for post-conviction relief, claiming that he should receive an opportunity for parole based upon recent rulings by the United States Supreme Court and that his consecutive sentences violated the Eight Amendment's protection against cruel and unusual punishment. The post-conviction court found that the petition stated a colorable claim and appointed counsel. Post-conviction counsel filed an amended petition, asserting that the Petitioner's sentences ran "afoul" of Miller v. Alabama, 567 U.S. 460, 479, 132 S. Ct. 2455, 2469 (2012), because the United States Supreme Court said in Miller that sentencing juveniles to life without the possibility of parole "will be uncommon." The State responded to the petition, arguing that it was barred by the one-year statute of limitations; that the Petitioner was not entitled to tolling of the statute of limitations; and that, in any event, the Petitioner was not entitled to relief under Miller because a jury sentenced him to life without the possibility of parole. The Petitioner filed a second amended petition for post-conviction relief, contending that he was entitled to have all of his sentences run concurrently pursuant to this court's opinion in Jacob Brown v. State, No. W2015-00887-CCA-R3-PC, 2016 WL 1562981 (Tenn. Crim. App. at Jackson, Apr. 15, 2016).

On April 13, 2018, the post-conviction court held a hearing on the petitions. During the hearing, post-conviction counsel argued that because the Petitioner filed his pro se petition within one year of Montgomery v. Louisiana, 136 S. Ct. 718 (2016), which "clarified" Miller and held that Miller applied retroactively, his petition was timely. On the merits of the petition, post-conviction counsel conceded that the Petitioner's case did not fall "squarely" within the concept of Miller because Miller barred mandatory sentences of life without parole for juveniles whereas a jury sentenced the Petitioner to life without parole. Nevertheless, post-conviction counsel argued that under Miller, Montgomery, and Jacob Brown, the Petitioner's consecutive sentences were excessive.

In a written order, the post-conviction court denied the petition for post-conviction relief. First, the court found that the United States Supreme Court's holding in Miller did not apply to the Petitioner because the Petitioner "was sentenced by a jury after a sentencing hearing at which he was permitted to present mitigating evidence, including, evidence that emphasized his youth, immaturity and testimony regarding his mental health." The court also found that the Petitioner was not entitled to relief under Jacob Brown because this court considered the Petitioner's consecutive sentences on direct appeal of his convictions, reduced his sentences for attempted first degree murder but left consecutive sentencing "intact," and stated that "'[o]nly a severe and lengthy punishment would be appropriate'" in this case. Finally, the post-conviction court concluded that the

petition was untimely because <u>Miller</u> did not create a new rule of constitutional law that was applicable to the Petitioner.

## II. Analysis

On appeal, the Petitioner maintains that his petition was timely because he filed it within one year of the United States Supreme Court's decision in <u>Montgomery</u> and this court's decision in <u>Jacob Brown</u>. He also contends that his consecutive sentences "run afoul" of the United States Supreme Court's logic in <u>Miller</u> and violate the Eighth Amendment's prohibition against cruel and unusual punishment pursuant to <u>Jacob Brown</u>. The State argues that the petition was time-barred because the Petitioner filed it more than one year after the United States Supreme Court's decision in <u>Miller</u> and that neither <u>Montgomery</u> nor <u>Jacob Brown</u> announced a new rule of constitutional law that tolled the statute of limitations. We agree with the State.

"Relief under [the Post-Conviction Procedure Act] shall be granted when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." Tenn. Code Ann. § 40-30-103. However, to obtain relief, the post-conviction petition must be filed within one year of the final action of the highest state appellate court to which an appeal is taken. Tenn. Code Ann. § 40-30-102(a); <u>see also</u> <u>Williams v. State</u>, 44 S.W.3d 464, 468 (Tenn. 2001). The statute emphasizes that "[t]ime is of the essence of the right to file a petition for post-conviction relief" and that "the one-year limitations period is an element of the right to file such an action and is a condition upon its exercise." Tenn. Code Ann. § 40-30-102(a).

Clearly, the Petitioner filed his post-conviction petition well-outside the one-year statute of limitations. Pursuant to Tennessee Code Annotated section 40-30-102(b), a court does not have jurisdiction to consider a petition for post-conviction relief if it was filed outside the one-year statute of limitations unless (1) "[t]he claim in the petition is based upon a final ruling of an appellate court establishing a constitutional right that was not recognized as existing at the time of trial, if retrospective application of that right is required"; (2) "[t]he claim in the petition is based upon new scientific evidence establishing that such petitioner is actually innocent of the offense or offenses for which the petitioner was convicted"; or (3) the claim in the petition "seeks relief from a sentence that was enhanced because of a previous conviction and such conviction in the case in which the claim is asserted was not a guilty plea with an agreed sentence, and the previous conviction has subsequently been held to be invalid[.]" The Petitioner contends that the first exception applies in this case. In that regard, the petition "must be filed within one (1) year of the ruling of the highest state appellate court or the United States

supreme court establishing a constitutional right that was not recognized as existing at the time of trial." Tenn. Code Ann. § 40-30-102(b)(1).

Our supreme court has held that due process also may require tolling the statute of limitations. Whitehead v. State, 402 S.W.3d 615, 622-23 (Tenn. 2013). "[A] post-conviction petitioner is entitled to due process tolling of the one-year statute of limitations upon a showing (1) that he or she has been pursuing his or her rights diligently, and (2) that some extraordinary circumstance stood in his or her way and prevented timely filing." Bush v. State, 428 S.W.3d 1, 22 (Tenn. 2014) (citing Whitehead, 402 S.W.3d at 361). In explaining the first prong of the analysis, the court stated that "pursuing one's rights diligently 'does not require a prisoner to undertake repeated exercises in futility or to exhaust every imaginable option, but rather to make reasonable efforts [to pursue his or her claim].'" Id. (quoting Whitehead, 402 S.W.3d at 631). "[T]he second prong is met when the prisoner's attorney of record abandons the prisoner or acts in a way directly adverse to the prisoner's interests, such as by actively lying or otherwise misleading the prisoner to believe things about his or her case that are not true." Whitehead, 402 S.W.3d at 631. Moreover, tolling "'must be reserved for those rare instances where—due to circumstances external to the party's own conduct—it would be unconscionable to enforce the limitation period against the party and gross injustice would result.'" Id. at 631-32 (quoting Harris v. Hutchinson, 209 F.3d 325, 330 (4th Cir. 2000)). "The question of whether the post-conviction statute of limitations should be tolled is a mixed question of law and fact that is . . . subject to de novo review." Bush, 428 S.W.3d at 16 (citing Smith v. State, 357 S.W.3d 322, 355 (Tenn. 2011)). Generally, "appellate courts must defer to a post-conviction court's findings with regard to witness credibility, the weight and value of witness testimony, and the resolution of factual issues presented by the evidence." Whitehead, 402 S.W.3d at 621 (citing Momon v. State, 18 S.W.3d 152, 156 (Tenn. 1999)).

In June 2012, the United States Supreme Court held in Miller that a mandatory sentence of life without the possibility of parole for a juvenile offender violates the United States Constitution's Eighth Amendment prohibition against cruel and unusual punishment. 567 U.S. at 470. The Court did not hold in Miller, though, that a juvenile could never be sentenced to life without the possibility of parole. Charles Everett Lowe-Kelley v. State, No. M2015-00138-CCA-R3-PC, 2016 WL 742180, at *9 (Tenn. Crim. App. at Nashville, Feb. 24, 2016) (citing Miller, 132 S. Ct. at 2469). Instead, the Court required "a certain process—considering an offender's youth and attendant characteristics—before imposing a particular penalty." Miller, 567 U.S. at 483; see Cedrick Dickerson v. State, No. W2013-01766-CCA-R3-PC, 2014 WL 3744454, at *5 (Tenn. Crim. App. at Jackson, July 28, 2014) (holding that defendant's sentence of life without parole did not run afoul of Miller when the record demonstrated that the trial court "provided the exact consideration that the Supreme Court called for in Miller").

Nevertheless, the Court warned that "appropriate occasions for sentencing juveniles to this harshest possible penalty will be uncommon. That is especially so because of the great difficulty . . . of distinguishing at this early age between 'the juvenile offender whose crime reflects unfortunate yet transient immaturity, and the rare juvenile offender whose crime reflects irreparable corruption.'" Id. at 479-80 (quoting Roper v. Simmons, 543 U.S. 551, 573 (2005)).

In January 2016, the United States Supreme Court considered in Montgomery "whether Miller's prohibition on mandatory life without parole for juvenile offenders indeed did announce a new substantive rule that, under the Constitution, must be retroactive." 136 S. Ct. at 732. Concluding that Miller announced a new substantive rule of constitutional law that must be applied retroactively, the Court discussed its holding in Miller as follows:

> Miller, it is true, did not bar a punishment for all juvenile offenders . . . . Miller did bar life without parole, however, for all but the rarest of juvenile offenders, those whose crimes reflect permanent incorrigibility. . . . Before Miller, every juvenile convicted of a homicide offense could be sentenced to life without parole. After Miller, it will be the rare juvenile offender who can receive that same sentence. . . . Miller drew a line between children whose crimes reflect transient immaturity and those rare children whose crimes reflect irreparable corruption. The fact that life without parole could be a proportionate sentence for the latter kind of juvenile offender does not mean that all other children imprisoned under a disproportionate sentence have not suffered the deprivation of a substantive right.

Id. at 734.

In Jacob Brown, a jury convicted the petitioner of two counts of first degree murder for beating an elderly couple to death in their home with a baseball bat. No. W2015-00887-CCA-R3-PC, 2016 WL 1562981, at *1-2 (Tenn. Crim. App. at Jackson, Apr. 15, 2016). The petitioner was sixteen years old at the time of the crimes. Id. at *1. Like this case, the trial court held a separate sentencing hearing, and the jury determined that the petitioner should serve two terms of life without the possibility of parole. Id. The trial court ordered that the petitioner serve the sentences, along with an eight-year sentence for aggravated burglary, consecutively. Id. In appealing the post-conviction court's denial of his petition for post-conviction relief to this court, a panel of this court refused to hold that the petitioner's sentences of life without the possibility of parole ran afoul of Miller because the sentences were not mandatory and were imposed by a jury after a sentencing hearing in which the Petitioner was able to present mitigating evidence. Id. at *7. However, the panel expressed "misgivings" about the petitioner's consecutive

sentencing "in light of the Supreme Court's repeated emphasis that 'children are constitutionally different than adults,' [Montgomery, 136 S. Ct.] at 736, and its warnings against the imposition of excessive punishments against juvenile offenders." Id. The panel went on to conclude that "consecutive alignment of the petitioner's sentences does not comport with the recent rulings of the United States Supreme Court" and remanded the case to the trial court for entry of corrected judgments of conviction to reflect concurrent sentencing. Id. at *8.

Turning to the instant case, we initially note that, like the sentences in Jacob Brown, the Petitioner's sentences of life without the possibility of parole do not directly contravene Miller because they were not mandatory but were imposed by a jury after a sentencing hearing in which the Petitioner was able to present mitigating evidence. In any event, we agree with the post-conviction court that the Petitioner's petition for post-conviction relief was untimely. Miller announced a new rule of constitutional law whereas Montgomery addressed Miller's holding for retroactivity purposes. Montgomery held that Miller must be applied retroactively but did not announce a new substantive rule of constitutional law. See Jermaine Stevenson v. Jeffrey Woods, No. 2:16-CV-90, 2019 WL 441947, at *2 (W.D. Mich. Feb. 5, 2019); Frankie Gonzalez v. Baltazar, No. CR 96-114 (JBS), 2018 WL 6303826, at *4 (D.N.J. Nov. 28, 2018); Cheyenne A. Moore v. Martin, No. CIV-18-409-R, 2018 WL 6016983, at *1-2 (W.D. Okla. June 7, 2018); Doiakah Gray v. Dorethy, No. 17 C 258, 2017 WL 4263985, at *2 (N.D. Ill. Sept. 26, 2017); Malvo v. Mathena, 259 F. Supp. 3d 321, 330 (D. Md. 2017); Clem v. Fleming, 664 F. App'x 272, 275 (4th Cir. 2016); State v. Goynes, 876 N.W.2d 912, 919 (Neb. 2016). Likewise, Jacob Brown applied the holdings in Miller and Montgomery to grant the petitioner relief on his consecutive sentencing claim but did not announce a new substantive rule of constitutional law.

The statute of limitations begins to run when the new substantive rule is announced, not when a subsequent decision makes that decision retroactive. Dodd v. United States, 545 U.S. 353, 356-60 (2005). Accordingly, the statute of limitations in this case began to run on June 25, 2012, when the United States Supreme Court announced its decision in Miller, and expired one year later on June 25, 2013. Because the Petitioner filed his petition for post-conviction relief on December 12, 2016, the post-conviction court properly ruled that the petition was untimely.

Moreover, the Petitioner has not made any argument or showing as to why the one-year limitations period should be tolled on due process grounds. He has not offered any explanation as to why he waited more than three years after the statute of limitations expired to file his petition for post-conviction relief. Accordingly, we affirm the post-conviction court's denial of the petition.

## III. Conclusion

Based upon the oral arguments, the record, and the parties' briefs, we affirm the judgment of the post-conviction court.

_____
NORMA MCGEE OGLE, JUDGE