308 Ga. 354
FINAL COPY

S19A1253.  STUBBS v. HALL.

WARREN, Justice.

In 2005, Henry Stubbs was convicted of armed robbery and hijacking a motor vehicle, among many other crimes, and was sentenced to life imprisonment plus 31 years.  On direct appeal, the Court of Appeals affirmed his convictions in 2008.  See *Stubbs v. State*, 293 Ga. App. 692 (667 SE2d 905) (2008).  In 2012, Stubbs filed a writ of habeas corpus through an attorney, which the habeas court dismissed as untimely.  He then filed an application for a certificate of probable cause in this Court to appeal that dismissal.  We granted Stubbs's application and posed the following question:

> Did the habeas court err in dismissing Stubbs's habeas petition as untimely when Stubbs presented evidence, via his verified habeas petition, that he had not been advised of the time limitations governing habeas corpus actions?  See OCGA § 9-14-42 (c) & (d).

Although we conclude that the habeas court's ruling about the exact date that Stubbs's convictions became final is erroneous, we

nonetheless affirm the habeas court's dismissal of Stubbs's petition because it was untimely under OCGA § 9-14-42 (c) (1) — a fact that neither party disputes. We also conclude that Stubbs's untimely petition is not subject to statutory or equitable tolling. We therefore answer the question presented "no" and affirm the habeas court's dismissal of Stubbs's petition.

### 1. Background and Procedural History.

*(a) Conviction and direct appeal.*

On November 3, 2005, Stubbs was sentenced to life in prison plus 31 years after being found guilty of multiple offenses, including armed robbery and hijacking a motor vehicle. On direct appeal, the Court of Appeals affirmed Stubbs's convictions on September 24, 2008. See *Stubbs*, 293 Ga. App. at 692.

*(b) Habeas petition.*

Approximately four years and three months later, on December 19, 2012, Stubbs filed a verified petition for writ of habeas corpus, raising multiple claims of ineffective assistance of trial and appellate counsel. Notwithstanding that his petition for writ of

habeas corpus was filed on his behalf by an attorney, Stubbs alleged that "he was never advised of [his] right to file [a] Petition for Writ of Habeas Corpus and [never advised of the] time limit for filing [the] Petition" by the trial court, trial counsel, or appellate counsel. In his response to the Warden's motion to dismiss, Stubbs again noted "that neither the sentencing court nor any of his attorneys informed him of the deadline for filing his Petition." At some point, Stubbs's attorney passed away, and Stubbs began to represent himself. After the case was transferred several times, the Warden filed another motion to dismiss, arguing that Stubbs's habeas petition was untimely under OCGA § 9-14-42 (c) (1). The Hancock County Superior Court held a hearing on May 16, 2018, and Stubbs appeared at the hearing without counsel and without any witnesses. The habeas court ultimately concluded that Stubbs's petition was untimely under OCGA § 9-14-42 (c) (1) and dismissed it in an order entered on May 29, 2018.

   (c) *The Habeas court's analysis of the petition's untimeliness.*

   In its order dismissing Stubbs's habeas petition, the habeas

court concluded that the petition was untimely, citing OCGA § 9-14-42 (c) (1) and "Georgia law" "[p]rior to the enactment of OCGA § 9-14-42 (c)" which "recognized that a conviction is 'final' when direct review, including the time to file a petition for a writ of certiorari to the United States Supreme Court, has concluded or where the time for seeking further appellate review has expired."[1] After noting that the Court of Appeals affirmed Stubbs's convictions on September 24, 2008, the habeas court reasoned that Stubbs "then had 10 days to either move for reconsideration or file a notice of intent to apply for certiorari review." Because Stubbs "did neither," the trial court ruled that "Petitioner's convictions were 'final' as of October 6, 2008 — the date on which his time for seeking appellate review expired" — and that Stubbs had "four years from that date, or October 6, 2012, to file a timely habeas petition challenging these convictions."[2]

---

[1] Specifically, the trial court cited *Turpin v. Todd*, 268 Ga. 820 (493 SE2d 900) (1997), which we discuss in Division 3 (b), and *Taylor v. State*, 262 Ga. 584 (422 SE2d 430) (1992), which was cited in *Turpin*.

[2] Because ten days from September 24, 2008, fell on a Saturday, the following Monday, October 6, 2008, was used as the date for finality. See OCGA § 1-3-1 (d) (3).

The habeas court then dismissed Stubbs's petition as untimely because "he filed [his] action on December 19, 2012, more than two months late."

*(d) Certificate of probable cause.*

Still representing himself, Stubbs timely filed a notice of appeal and an application for a certificate of probable cause to appeal to this Court on June 27, 2018, claiming that the habeas court erred in dismissing his petition as untimely because neither his trial counsel, nor his appellate counsel, nor the trial court had informed him of the limitations period for filing a habeas corpus petition. He therefore argued that his habeas petition was subject to equitable tolling. We granted Stubbs's application and asked the question quoted above, and the case was orally argued on September 12, 2019.[3]

**2. Statutory Deadline for Filing a Petition for Habeas Corpus under OCGA § 9-14-42 (c) (1).**

---

[3] Brian Kammer, Director of the Habeas Project of the Mercer University School of Law, and his student, Randall Edwards, represented Stubbs on appeal pro bono. This Court thanks them for their service.

OCGA § 9-14-42 (c), which was added to Georgia's habeas corpus statutes in 2004, see Ga. L. 2004, p. 917, § 1, prescribes the statute of limitations for habeas corpus actions and enumerates four potential dates from which a habeas action may be brought timely:

(c) Any action brought pursuant to this article shall be filed within one year in the case of a misdemeanor, except as otherwise provided in Code Section 40-13-33, or within four years in the case of a felony, other than one challenging a conviction for which a death sentence has been imposed or challenging a sentence of death, from:

(1) The judgment of conviction becoming final by the conclusion of direct review or the expiration of the time for seeking such review; provided, however, that any person whose conviction has become final as of July 1, 2004, regardless of the date of conviction, shall have until July 1, 2005, in the case of a misdemeanor or until July 1, 2008, in the case of a felony to bring an action pursuant to this Code section;

(2) The date on which an impediment to filing a petition which was created by state action in violation of the Constitution or laws of the United States or of this state is removed, if the petitioner was prevented from filing such state action;

(3) The date on which the right asserted was initially recognized by the Supreme Court of the United States or the Supreme Court of Georgia, if that right was newly recognized by said courts and made retroactively applicable to cases on collateral review; or

(4) The date on which the facts supporting the

claims presented could have been discovered through the exercise of due diligence.

Under OCGA § 9-14-42 (c) (1), the limitations period begins running when a conviction becomes "final." Specifically, subsection (c) (1) provides that, for a felony, a habeas action must be brought within four years from the judgment of conviction becoming final "by the conclusion of direct review or the expiration of the time for seeking such review."[4] Thus, because Stubbs was convicted of felonies in which the death sentence was not imposed, he had four years from the date of his judgment of conviction becoming "final" to file a timely habeas petition under OCGA § 9-14-42 (c) (1).[5]

*3. Finality under OCGA § 9-14-42 (c) (1).*

The question of exactly when a judgment of conviction becomes final under OCGA § 9-14-42 (c) (1) is not well settled.[6] And because

---

[4] Because Stubbs's convictions had not become final "as of July 1, 2004," the later portion of OCGA § 9-14-42 (c) (1) does not apply.

[5] We note that Stubbs was also found guilty of multiple misdemeanors for which a one-year statute of limitations period applied. See OCGA § 9-14-42 (c).

[6] We are aware of no published Georgia appellate decision deciding this

— as explained below — the habeas court erred in determining when Stubbs's convictions became final and thus when the statute of limitations period under OCGA § 9-14-42 (c) (1) expired for his habeas petition, we must first discuss how habeas courts should calculate finality for purposes of OCGA § 9-14-42 (c) (1) to evaluate whether the habeas court's error was harmful here.

*(a) Determining when a judgment of conviction becomes final for habeas actions under federal law.*

OCGA § 9-14-42 (c) closely mirrors 28 USC § 2244 (d) (1), which was enacted in 1996, and establishes the statute of limitations for persons in custody "pursuant to the judgment of a State court" to file a federal petition for habeas corpus. Compare OCGA § 9-14-42 (c) (1) (providing that the period of limitations for filing a petition for habeas corpus runs from "[t]he judgment of conviction becoming final by the conclusion of direct review or the expiration of the time for seeking such review") with 28 USC § 2244

---

question in the precise context of OCGA § 9-14-42 (c) (1), and—as we explain in footnote 7 and Division 3 (b) below—we respectively disapprove and distinguish two cases petitioners frequently cite to support their finality arguments.

(d) (1) (A) (providing that the period of limitations for filing a petition for habeas corpus runs from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review").  See also *Abrams v. Laughlin*, 304 Ga. 34, 37 (816 SE2d 26) (2018) (recognizing that, except for providing a time period of four years (for a felony) instead of one year, OCGA § 9-14-42 (c) "conforms very closely" to the "statute of limitation applicable to a federal habeas application by a person in custody pursuant to a state court judgment, 28 USC § 2244 (d) (1)," and that "[t]he limitation period under [28 USC § 2244 (d) (1)] runs from the latest of four dates that are virtually the same as the four specified in OCGA § 9-14-42 (c)").

"[I]n construing a Georgia statute that closely tracks federal statutory law, we may look to federal court decisions and commentary interpreting the federal statute as persuasive authority." *Abrams*, 304 Ga. at 36.  Cf. *Bowden v. The Med. Center*, 297 Ga. 285, 291 n.5 (773 SE2d 692) (2015) (explaining that federal cases interpreting the discovery provisions of the Federal Rules of

Civil Procedure were persuasive because Georgia's Civil Practice Act discovery provisions conform very closely to the federal ones); *ABCO Builders v. Progressive Plumbing*, 282 Ga. 308, 309 (647 SE2d 574) (2007) ("Because our state arbitration code closely tracks federal arbitration law, we look to federal cases for guidance in construing our own statutes.").

In analyzing the finality requirement under 28 USC § 2244 (d) (1) (A), the United States Supreme Court has "ma[d]e clear" that

> [t]he text of § 2244 (d) (1) (A), which marks finality as of "the conclusion of direct review or the expiration of the time for seeking such review," consists of two prongs. Each prong — the "conclusion of direct review" and the "expiration of the time for seeking such review" — relates to a distinct category of petitioners. For petitioners who pursue direct review all the way to this Court, the judgment becomes final at the "conclusion of direct review" — when this Court affirms a conviction on the merits or denies a petition for certiorari. For all other petitioners, the judgment becomes final at the "expiration of the time for seeking such review"—when the time for pursuing direct review in this Court, or in state court, expires.

*Gonzalez v. Thaler*, 565 U.S. 134, 150 (132 SCt 641, 181 LE2d 619) (2012). In reaching that conclusion, the Supreme Court looked to

*Clay v. United States*, 537 U.S. 522 (123 SCt 1072, 155 LE2d 88) (2003), which interpreted the similarly worded habeas statute of limitations provision for "prisoner[s] in [federal] custody," 28 USC § 2255 (a) & (f), and held that a federal judgment becomes final "when [the Supreme] Court affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or, if a petitioner does not seek certiorari, when the time for filing a certiorari petition expires." *Gonzalez*, 565 U.S. at 149 (quoting *Clay,* 537 U.S. at 527) (punctuation omitted); *Clay*, 537 U.S. at 527 (explaining that finality in the context of post-conviction relief "has a long-recognized, clear meaning: Finality attaches when this Court affirms a conviction on the merits on direct review or denies a petition for a writ of certiorari, or when the time for filing a certiorari petition expires").

*(b) Determining when a judgment of conviction becomes final for habeas actions in Georgia under OCGA § 9-14-42 (c) (1).*

Considering the textual similarities between OCGA § 9-14-42 (c) (1) and 28 USC § 2244 (d) (1) (A), we see no reason to depart from

the United States Supreme Court's reasoning in *Gonzalez* in determining finality for purposes of federal habeas petitions based on state court judgments when we, in turn, interpret finality for purposes of state habeas petitions under OCGA § 9-14-42 (c) (1). See *Abrams*, 304 Ga. at 38 (applying reasoning from United States Supreme Court decisions to "our reading of the limitation period set by our General Assembly in OCGA § 9-14-42 (c) (3)"). Accordingly, we hold as a general rule that, for purposes of OCGA § 9-14-42 (c) (1), a judgment of conviction becomes "final" when the United States Supreme Court either affirms a conviction on the merits or denies a petition for writ of certiorari, i.e., at "the conclusion of direct review," or when the time for pursuing the next step in the direct appellate review process expires without that step having been taken, i.e., "the expiration of the time for seeking such review."[7]

---

[7] In light of this holding, we disapprove *Horton v. Wilkes*, 250 Ga. 902, 904 (302 SE2d 94) (1983), to the extent it suggests that a "judgment is not final until the judgment of this [C]ourt is made the judgment of the trial court" for purposes of finality as it pertains to the statute of limitations in habeas cases. Because *Horton* was decided before subsection (c) was added to OCGA § 9-14-42, our conclusion in that case cannot be construed as interpreting the statute

For example, for a defendant whose conviction was affirmed on direct appeal by the Court of Appeals of Georgia,[8] the "conclusion of direct review" — if exercised to its fullest — would occur when, after this Court denied the defendant's petition for certiorari or granted the defendant's petition for certiorari and affirmed the defendant's conviction, the United States Supreme Court either affirms the defendant's conviction or denies the defendant's petition for

---

of limitations provision for habeas corpus petitions under OCGA § 9-14-42 (c) (1). Although we agree with *Horton*'s ultimate conclusion that "a person . . . cannot institute a petition for habeas corpus until the conviction is final," 250 Ga. at 904, we reject the notion that finality in this context rests on the judgment of this Court being "made" the judgment of the trial court, particularly given that the sole case on which *Horton* relied for this point is distinguishable because it involved a divorce dispute rather than a habeas action. See id. (relying on *Twilley v. Twilley*, 195 Ga. 297, 298 (24 SE2d 46) (1943)). Notably, this Court has never cited *Horton* nor relied on its articulation of finality in a published opinion.

[8] If, however, a defendant were convicted of a crime but did not appeal the conviction, then the "expiration of the time for seeking [direct] review" would occur when the defendant's time to appeal the conviction expired. This means that, for a defendant whose conviction is directly appealable to the Court of Appeals or to this Court, the expiration of the time for seeking direct review would occur when the defendant's time to file a notice of appeal to the Court of Appeals or to this Court, respectively, expired without the defendant doing so. Under these circumstances, the date on which the defendant's judgment of conviction becomes final would be measured by "the expiration of the time for seeking [direct] review" — rather than the "conclusion of direct review" — because the defendant would not have appealed the conviction.

certiorari. By contrast, the "expiration of the time for seeking [direct] review" would occur when the defendant's time to petition this Court for a writ of certiorari expires without the defendant filing a petition, see Ga. Supreme Court Rule 38 (2), because a party cannot file a petition for certiorari in the United States Supreme Court unless a judgment has been "entered by a state court of last resort." U.S. Sup. Ct. R. 13.1; see also Stephen M. Shapiro et al., *Supreme Court*) (*Practice* § 3.11, pp. 175-177 (10th ed. 2013) ("[N]o decision of a state court should be brought [to the United States Supreme Court] for review either by appeal or certiorari until the possibilities of review by all state courts have been exhausted," which means that if the judgment of a trial court or an intermediate state appellate court is subject to the possibility of discretionary review by a higher state court, the exercise of such discretion must be sought.) (quoting *Gorman v. Washington Univ.*, 316 U.S. 98, 100 (62 SCt 962, 86 LE 1300) (1942)); Brian R. Means, Federal Habeas Manual § 9A:14 (2019) (explaining that in *Gonzalez,* the United States Supreme Court held that "where a state prisoner does not

seek review in a State's highest court, the judgment becomes 'final' for purposes of [28 USC] § 2244 (d) (1) (A) on the date that the time for seeking such review expires" and "rejected the argument that, even where the petitioner does not seek review in the [S]tate's highest court, the limitations period does not commence running until the time expires for filing a petition for writ of certiorari [in the United States Supreme Court]" because the United States Supreme Court "can review only judgments of a 'state court of last resort' or of a lower state court if the 'state court of last resort' has denied discretionary review") (citing U.S. Sup. Ct. R. 13.1 & 28 USC § 1257 (a)).

In that vein, if a defendant did petition this Court for certiorari and we denied the petition, then the "expiration of the time for seeking [direct] review" would occur 90 days "after entry of the order denying" the defendant's petition for certiorari to this Court[9]—i.e.,

---

[9] We note that Rule 13 also provides that a "Justice may extend the time to file a petition for a writ of certiorari for a period not exceeding 60 days" for "good cause." U.S. Sup. Ct. R. 13.5.

when the time to petition the United States Supreme Court for a writ of certiorari expired without the defendant filing a petition. U.S. Sup. Ct. R. 13.1; see also Shapiro et al., supra at § 6.1, p. 377 ("[United States Supreme Court] Rule 13.1 provides that the certiorari period for the judgment of a state court that is subject to discretionary review commences with 'entry of the order denying discretionary review.'"). Or, if we granted the petition and affirmed the defendant's conviction, then the "expiration of the time for seeking [direct] review" would occur "90 days after [this Court's] entry of the judgment" — namely, when the time to petition the United States Supreme Court for a writ of certiorari expired without the defendant filing a petition.[10]   U.S. Sup. Ct. R. 13.1; see also

---

[10] We note that if a petitioner files a motion for reconsideration, either after the entry of a judgment from this Court or after the entry of an order denying a petition for certiorari in this Court, the period in which a timely petition for certiorari must be sought in the United States Supreme Court is tolled "until rehearing is denied or a new judgment is entered on the rehearing," Shapiro et al., supra at § 6.3, pp. 394-395, because "[a] timely petition for rehearing . . . operates to suspend the finality of the state court's judgment, pending the court's further determination whether the judgment should be modified so as to alter its adjudication of the rights of the parties," *Dept. of Banking of Nebraska v. Pink,* 317 U.S. 264, 266 (63 SCt 233, 87 LE 254) (1942).  See also U.S. Sup. Ct. R. 13.3 ("The time to file a petition for a

Shapiro et al., supra at § 6.1, pp. 376-377.

Likewise, for a defendant whose conviction was affirmed by this Court, the "conclusion of direct review" would occur when the United States Supreme Court affirmed the defendant's conviction or denied the defendant's petition for certiorari, whereas the "expiration of the time for seeking [direct] review" would occur when the time to petition the United States Supreme Court for a writ of

writ of certiorari runs from the date of entry of the judgment or order sought to be reviewed. . . . But if a petition for rehearing is timely filed in the lower court by any party, or if the lower court appropriately entertains an untimely petition for rehearing or sua sponte considers rehearing, the time to file the petition for a writ of certiorari for all parties . . . runs from the date of the denial of rehearing or, if rehearing is granted, the subsequent entry of judgment."); *Young v. Harper*, 520 U.S. 143, 147 n.1 (117 SCt 1148, 137 LE2d 270) (1997). However, because Stubbs never filed a petition of certiorari to this Court, no such tolling is warranted under United States Supreme Court rules.

Notably, however, a majority of the federal Courts of Appeals, including the Eleventh Circuit, has held that "the filing of a petition for rehearing in the [United States] Supreme Court [does not] delay commencement of the limitations period" for purposes of finality under the federal habeas statute, 28 USC § 2255. Means, supra at § 9A:16; see also *Drury v. United States*, 507 F3d 1295, 1296-1297 (11th Cir. 2007) ("We now join our sister circuits and, consistent with the Supreme Court's decision in *Clay*, hold that finality attaches when the Supreme Court denies a habeas petitioner's petition for certiorari review" and the petitioner's "filing of a motion for reconsideration of the Supreme Court's decision" does not toll the time for filing his federal habeas action, where his "filing of a motion for reconsideration . . . did not affect the disposition of his case. . . . Upon the denial of his certiorari petition, [the petitioner's] conviction was final for purposes of the [federal habeas statute's] limitations period.") (citing U.S. Sup. Ct. R. 16.3).

certiorari expired. See U.S. Sup. Ct. R. 13; *Gonzalez*, 565 U.S. at 154 (citing U.S. Sup. Ct. R. 13.1 and 28 USC § 1257 (a)).

We note that this rule is consistent with *Turpin v. Todd*, 268 Ga. 820 (493 SE2d 900) (1997), which many habeas petitioners cite — as did the habeas court in this case — to define finality in the habeas context. See id. at 831 n.49. And although *Turpin* assessed finality in a different context — i.e., for purposes of determining whether the "pipeline rule" applied to the defendant's case[11] — the purpose of establishing finality for the pipeline rule and for habeas petitions under OCGA § 9-14-42 (c) (1) is materially similar: marking finality in the appellate process. See id. at 830-831. As a result, *Turpin*'s definition of finality — when "a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied"—also comports with our holding in this case. Id. at 831 n.49.

---

[11] The pipeline rule, as adopted in *Taylor*, provides that "a new rule of criminal procedure . . . will be applied to all cases then on direct review *or not yet final*." 262 Ga. at 586 (emphasis supplied).

*(c) The habeas court erred in conducting its finality analysis under OCGA § 9-14-42 (c) (1).*

The habeas court correctly stated that "a conviction is 'final' when direct review, including the time to file a petition for a writ of certiorari to the United Sates Supreme Court, has concluded or where the time for seeking further appellate review has expired." But the court erred when calculating finality for purposes of determining the statute of limitations for Stubbs's habeas petition. Specifically, the court ruled that Stubbs's habeas petition was untimely because, by its calculation, Stubbs's "convictions were 'final' as of October 6, 2008" — ten days after the Court of Appeals affirmed Stubbs's convictions on September 24, 2008, and Stubbs failed to "either move for reconsideration or file a notice of intent to apply for certiorari review." Under that theory, Stubbs had "four years from that date, or until October 6, 2012, to file a timely habeas petition challenging these convictions," but Stubbs "filed [his] action on December 19, 2012, more than two months late."

The habeas court erred when it identified the notice of intent

to apply for certiorari — a document filed in the Court of Appeals under Supreme Court Rule 38 (1) and Georgia Court of Appeals Rule 38 (a) (1) — as the terminal appellate action in its finality calculation. We have recently explained that "this Court does not consider the filing of a notice of intent to be jurisdictional and does not generally dismiss or deny a petition for certiorari for failure to timely file a notice of intent." *McCoy v. State*, 303 Ga. 551, 551 n.1 (814 SE2d 319) (2018). As a result, a petitioner's filing of a notice of intent in the Court of Appeals — which is a non-jurisdictional, procedural requirement — has no bearing on when a judgment of conviction becomes final under OCGA § 9-14-42 (c) (1). The habeas court therefore erred when it ruled that Stubbs's convictions became final ten days after the Court of Appeals affirmed his convictions on direct review.

*(d) Stubbs's habeas petition was nonetheless untimely.*

Applying the proper calculation of finality for purposes of OCGA § 9-14-42 (c) (1) here, we conclude that Stubbs's convictions actually became final on October 14, 2008: the date on which

Stubbs's time for seeking a petition for certiorari in this Court expired without Stubbs filing one. See *Gonzalez*, 565 U.S. at 150 ("We thus agree . . . that because [the petitioner] did not appeal to the State's highest court, his judgment became final when his time for seeking review with the State's highest court expired."). Specifically, Stubbs had 20 days after the Court of Appeals affirmed his convictions on direct review to petition this Court for certiorari. See Ga. Supreme Court Rule 38 (2). Because Stubbs did not file a petition of certiorari within that timeframe, his convictions became final on October 14, 2008 — 20 days after the Court of Appeals affirmed his convictions on direct review. Thus, using the correct finality date, Stubbs, as a convicted felon not sentenced to death, had four years from October 14, 2008 — or until October 15, 2012 — to file his habeas action.[12] See OCGA § 9-14-42 (c) (1). But because Stubbs's petition was filed on December 19, 2012, over two months after October 15, 2012, the habeas court's miscalculation was

---

[12] Because October 14, 2012, was a Sunday, Stubbs had until the following Monday to file his petition. See OCGA § 1-3-1 (d) (3).

harmless under the circumstances presented here. Accordingly, we agree with the habeas court's conclusion that Stubbs's petition was untimely under OCGA § 9-14-42 (c) (1).

*4. OCGA § 9-14-42 Does Not Provide a Remedy for Violations of Subsection (d).*

Stubbs argues that he was not informed by the trial court of the limitations period for filing a habeas petition, and that this violation of the statutory mandate to inform defendants of the limitations period under OCGA § 9-14-42 (d) at sentencing should toll the limitations period. We first turn to the text of OCGA § 9-14-42 to evaluate whether it provides the type of remedy Stubbs seeks. See *Fed. Deposit Ins. Corp. v. Loudermilk*, 305 Ga. 558, 562 (826 SE2d 116) (2019) (explaining that in questions of statutory analysis, "we first look to the text because a statute draws its meaning . . . from its text") (citations and punctuation omitted). "And because we presume that the General Assembly meant what it said and said what it meant when it comes to the meaning of statutes, we must read the statutory text in its most natural and reasonable way, as

an ordinary speaker of the English language would." Id. (citations and punctuation omitted). OCGA § 9-14-42 provides:[13]

> (a) Any person imprisoned by virtue of a sentence imposed by a state court of record who asserts that in the proceedings which resulted in his conviction there was a substantial denial of his rights under the Constitution of the United States or of this state may institute a proceeding under this article.
>
> (b) The right to object to the composition of the grand or trial jury will be deemed waived under this Code section unless the person challenging the sentence shows in the petition and satisfies the court that cause exists for his being allowed to pursue the objection after the conviction and sentence have otherwise become final.
>
> (c) Any action brought pursuant to this article shall be filed within one year in the case of a misdemeanor, except as otherwise provided in Code Section 40-13-33, or within four years in the case of a felony, other than one challenging a conviction for which a death sentence has been imposed or challenging a sentence of death, from:
>
> > (1) The judgment of conviction becoming final by the conclusion of direct review or the expiration of the time for seeking such review; provided, however, that any person whose conviction has become final as of July 1, 2004, regardless of the date of conviction, shall have until July 1, 2005, in the case of a misdemeanor or until July 1, 2008, in the case of a felony to

---

[13] In seeking a remedy, Stubbs provides argument only on paragraphs (c) (1) and (2) of OCGA § 9-14-42.

bring an action pursuant to this Code section;

    (2) The date on which an impediment to filing a petition which was created by state action in violation of the Constitution or laws of the United States or of this state is removed, if the petitioner was prevented from filing such state action;

    (3) The date on which the right asserted was initially recognized by the Supreme Court of the United States or the Supreme Court of Georgia, if that right was newly recognized by said courts and made retroactively applicable to cases on collateral review; or

    (4) The date on which the facts supporting the claims presented could have been discovered through the exercise of due diligence.

(d) *At the time of sentencing, the court shall inform the defendant of the periods of limitation set forth in subsection (c) of this Code section.*

(Emphasis supplied.)

Although subsection (d) directs trial courts to "inform the defendant" "[a]t the time of sentencing" of the "periods of limitation set forth in subsection (c)," nothing in the text of OCGA § 9-14-42 provides a remedy for a trial court's failure to comply with this direction. See OCGA § 9-14-42. However, in conducting a textual analysis of a statute, we also look to a statute's context, which may

include "other provisions of the same statute, the structure and history of the whole statute, and the other law — constitutional, statutory, and common law alike — that forms the legal background of the statutory provision in question." *Fed. Deposit Ins. Corp.*, 305 Ga. at 562 (citation and punctuation omitted). Here, nothing in Chapter 14 of Title 9 — the chapter of the Georgia Code that governs habeas corpus — provides a remedy, let alone an express remedy, for a trial court's violation of subsection (d). See OCGA § 9-14-1 et seq.[14]

---

[14] Stubbs argues that OCGA § 9-14-48 (e), which was enacted at the same time as OCGA § 9-14-42 (c) and (d), provides "a potential mechanism by which to address a petition filed outside the ostensible limitations period" and that it shows that OCGA § 9-14-42 (d) "was intended to ensure that the newly enacted limitations periods did not prevent meaningful access to the Writ as a result of defendant's ignorance of the law." But that argument fails because OCGA § 9-14-48 (e) does not purport to permit the filing of "a petition filed outside the . . . limitations period" and instead provides that a petition may be *dismissed* upon a respondent's particularized showing of prejudicial delay, meaning petitioners who would otherwise be eligible to file a petition under OCGA § 9-14-42 (c) (1) could have their petitions dismissed. See OCGA § 9-14-48 (e) ("A petition . . . may be dismissed if there is a particularized showing that the respondent has been prejudiced in its ability to respond to the petition by delay in its filing unless the petitioner shows by a preponderance of the evidence that it is based on grounds of which he or she could not have had knowledge by the exercise of reasonable diligence before the circumstances prejudicial to the respondent occurred. This subsection shall apply only to convictions had before July 1, 2004."). See also, e.g., *Wiley v. Miles*, 282 Ga. 573, 578 (652 SE2d 562) (2007)

Moreover, the structure of OCGA § 9-14-42 shows that the General Assembly enacted a detailed statutory scheme — including a statute of limitations provision in subsection (c) — under which convicted defendants may seek state habeas relief, essentially providing that such petitioners have either one year (in the case of a misdemeanor) or four years (in the case of a felony) to file a habeas action. And although the statute of limitations laid out in subsection (c) contains several types of events that could cause a petitioner's statute-of-limitations clock to start running, none of them permit tolling of the statute of limitations, and none of them expressly pertains to a trial court's violation of subsection (d). See OCGA § 9-14-42 (c) (1)-(4).[15]

_____

(reversing a habeas court's denial of the State's motion to dismiss a petitioner's habeas petition under OCGA § 9-14-48 (e), given the petitioner's "extreme delay in filing his habeas petition, the total prejudice to the government in its ability to respond, and [the petitioner's] failure to offer any legally valid excuse for not filing the petition sooner," and remanding "the case with instructions to the habeas court to dismiss the petition with prejudice").

[15] We have not always been precise in the way we have described the four events discussed in OCGA § 9-14-42 (c) that could cause a petitioner's one- or four-year statute-of-limitations clock to start running. See, e.g., *Mitchum v. State*, 306 Ga. 878, 885 n.3 (834 SE2d 65) (2019) (describing OCGA § 9-14-42 (c) (4) as "toll[ing]" the statute of limitations); *Abrams*, 304 Ga. at 35-38

For example, paragraph (c) (1) provides the general rule that the statute-of-limitations clock starts running when a "judgment of conviction [becomes] final by the conclusion of direct review or the expiration of the time for seeking such review[.]"  OCGA § 9-14-42 (c) (1).  But the General Assembly also provided in paragraph (c) (1) a grace period for those habeas petitioners whose convictions had become "final as of July 1, 2004" (the date on which OCGA § 9-14-42 became effective): one year in the case of a misdemeanor and four years in the case of a felony.  This statutory grace period created specific circumstances under which petitioners whose convictions became final before July 1, 2004, could file a habeas petition, even though those petitions would otherwise be untimely in most cases.  See OCGA § 9-14-42 (c) (1).  Yet none of the other events that can trigger the statute-of-limitations clock for a habeas petitioner

---

(explaining that "four alternative dates" under OCGA § 9-14-42 (c) can trigger the statute-of-limitations clock for a habeas petitioner, while also describing the events contemplated in paragraphs (c) (3) and (c) (4) as "toll[ing]" the statute of limitations); *State v. Sosa*, 291 Ga. 734, 736 (733 SE2d 262) (2012) (describing OCGA § 9-14-42 (c) (3) as an "exception"  that "toll[s] the statute of limitations").

provide a similar grace period, and none expressly allows for tolling if a trial court violates subsection (d). See OCGA § 9-14-42 (c) (2) (starting the statute-of-limitations clock from "[t]he date on which an impediment to filing a petition which was created by state action in violation of the Constitution or laws of the United States or of this state is removed, if the petitioner was prevented from filing such state action"); § 9-14-42 (c) (3) (starting the statute-of-limitations clock from "[t]he date on which the right asserted was initially recognized by the Supreme Court of the United States or the Supreme Court of Georgia, if that right was newly recognized by said courts and made retroactively applicable to cases on collateral review"); § 9-14-42 (c) (4) (starting the statute-of-limitations clock from "[t]he date on which the facts supporting the claims presented could have been discovered through the exercise of due diligence").[16]

---

[16] Stubbs also argues that the trial court's failure to advise him under OCGA § 9-14-42 (d) "should be construed as a state-created impediment" under OCGA § 9-14-42 (c) (2). But he cites no authority to support that assertion. Moreover, under the textually similar federal habeas statute, 28 USC § 2244 (d) (1) (B), federal appellate courts have construed an "impediment to filing" a petition as requiring a "'causal connection' between the impediment and

Georgia statutes beyond those governing habeas corpus reinforce our conclusion. To that end, the General Assembly has demonstrated elsewhere in the Code — in both the criminal and civil contexts — that it knows how to provide expressly for tolling of statutes of limitations. See, e.g., OCGA § 9-3-90 (a) (providing that "[i]ndividuals who are legally incompetent because of intellectual disability or mental illness, who are such when the cause of action accrues, shall be entitled to the same time after their disability is removed to bring an action as is prescribed for other persons"); § 9-3-90 (b) (providing that "individuals who are less than 18 years of

---

untimely filing," Means, supra at § 9A:25, and Stubbs presents no evidence that he was "prevented from filing" his habeas action as required by the statute. See, e.g., *Johnson v. Fla. Dept. of Corrections*, 513 F3d 1328, 1332 (11th Cir. 2008) (concluding that the petitioner had not established an illegal impediment to his habeas petition filing where he had "not demonstrated how the State's action actually prevented him from timely filing his [habeas] petitions"). To the contrary, Stubbs—through habeas counsel—filed a habeas petition, albeit untimely. See, e.g., *Lawrence v. Florida*, 421 F3d 1221, 1226 (11th Cir. 2005), aff'd, 549 U.S. 327 (127 SCt 1079, 166 LE2d 924) (2007) (concluding that the provision of an incompetent post-conviction attorney "is not the type of State impediment envisioned" by the statute). Stubbs's argument that the trial court created an impediment to filing his habeas petition and "actively misled" him "by suggesting that his *only* post-trial review, other than a direct appeal, was a perfunctory consideration by the Sentencing Review Panel," is unavailing for the same reasons. (Emphasis in original.)

age when a cause of action accrues shall be entitled to the same time after he or she reaches the age of 18 years to bring an action as is prescribed for other persons"); § 9-3-91 (providing that the limitations period for a "cause of action shall cease to operate during the continuance of" a disability if "any person suffers a disability . . . after his right of action has accrued and the disability is not voluntarily caused or undertaken by the person claiming the benefit thereof"); § 9-3-96 (providing that "the period of limitation shall run only from the time of the plaintiff's discovery of the fraud" "[i]f the defendant . . . [is] guilty of a fraud by which the plaintiff has been debarred or deterred from bringing an action"); § 17-3-2 (providing the "period within which a prosecution must be commenced" does not include any period in which: "[t]he accused is not usually and publicly a resident within this state"; "[t]he person committing the crime is unknown or the crime is unknown"; "[t]he accused is a government officer or employee and the crime charged is theft by conversion of public property while such an officer or employee"; or "[t]he accused is a guardian or trustee and the crime charged is theft

by conversion of property of the ward or beneficiary"); § 17-3-2.2 (providing that "if the victim is a person who is 65 years of age or older, the applicable period within which a prosecution must be commenced . . . shall not begin to run until the violation is reported to or discovered by a law enforcement agency, prosecuting attorney, or other governmental agency, whichever occurs earlier"). But we are aware of no statute — and Stubbs points to none — that provides tolling when a trial court violates OCGA § 9-14-42 (d).

Stubbs argues that when a trial court fails to inform a defendant of the habeas limitations period at sentencing under OCGA § 9-14-42 (d), it "jeopardiz[es]" access to habeas corpus, and that the limitations period should be tolled as a result. We disagree. Indeed, the text of OCGA § 9-14-42 supports our conclusion that the failure to comply with subsection (d) does not somehow toll the limitations period under subsection (c). That is because — in addition to not including a statutory tolling provision in subsection (c) — the General Assembly necessarily contemplated in OCGA § 9-14-42 (c) (1) that a large group of habeas petitioners would *not* be

given the notice outlined in OCGA § 9-14-42 (d). To that end, subsection (d) does not apply to *any* petitioner whose conviction became final as of July 1, 2004, because subsection (d) was not in effect at the time trial courts issued those sentences — meaning that none of those habeas petitioners would have received the notice prescribed by the statute. That the General Assembly did not require the notice provided in subsection (d) to be applied retroactively[17] undermines the notion that the notice provided for in subsection (d) is so critical that without it, a habeas petitioner may contravene the statute of limitations scheme set forth in OCGA § 9-14-42 (c).

And although Stubbs argues that "statutory provisions require time calculations which are non-obvious, and defendants who are not apprised of the relevant deadlines are at a potentially

---

[17] See, e.g., *Anthony v. Penn*, 212 Ga. 292, 293 (92 SE2d 14) (1956) ("Laws prescribe for the future. Unless a statute, either expressly or by necessary implication, shows that the General Assembly intended that it operate retroactively, it will be given only prospective application.").

catastrophic disadvantage,"[18] we have held that ignorance of the law alone is no excuse for a failure to comply with a statute of limitations, see *O'Callaghan v. Bank of Eastman*, 180 Ga. 812, 820 (180 SE 847) (1935) (explaining that ignorance of the law "does not suspend the statute of limitations"); cf. *Fitzgerald v. Morgan*, 200 Ga. 651, 655 (38 SE2d 171) (1946) (quoting *Adams v. Guerard*, 29 Ga. 651, 673 (76 Am. Dec. 624) (1860)), and even apart from the notice trial courts are directed to provide under subsection (d), OCGA § 9-14-42 (c) itself provides legal notice of the statute of limitations provision that applies to habeas petitions, see *Cheeley v. Henderson*, 261 Ga. 498, 503 (405 SE2d 865) (1991), overruled in part on other grounds by *Hewett v. Kalish*, 264 Ga. 183 (442 SE2d 233) (1994) ("Everyone is presumed to know the law, and the law never favors those who misinterpret it."); *O'Callaghan*, 180 Ga. at 820 ("'Courts of equity will not relieve from the bar of the statute of

---

[18] Of course, even assuming that the trial court did violate subsection (d) and failed to advise Stubbs here, Stubbs's lost opportunity is directly attributable to the untimely filing of his habeas petition, which was filed through counsel.

limitations, where a party has remained inactive from ignorance of his rights.'") (quoting *Adams*, 29 Ga. at 651).

We thus conclude that the General Assembly did not include a tolling provision in OCGA § 9-14-42, much less a provision specific to alleged violations of subsection (d).  And especially considering the comprehensive and prescriptive statutory scheme the General Assembly enacted to govern habeas corpus, we have no authority to judicially create such a remedy.  See *Hayes v. State*, 298 Ga. 98, 104 (779 SE2d 609) (2015) (pointing to another statutory provision and reasoning that "it is clear that the General Assembly knew how to create such a [certification] requirement, and chose not to").  See also, e.g., Antonin Scalia & Bryan A. Garner, Reading Law: The Interpretation of Legal Texts 93 (2012) ("'It is not [the judge's] function or within his power to enlarge or improve or change the law.'  Nor should the judge elaborate unprovided-for exceptions to a text [because] . . . 'if the [legislature had] intended to provide additional exceptions, it would have done so in clear language.'") (citations omitted).

*5. We Decline to Apply a Novel Equitable Tolling Doctrine to OCGA § 9-14-42 (c) in Georgia.*

We have by now established that the text of OCGA § 9-14-42 does not provide Stubbs the remedy he seeks. Stubbs nonetheless asks this Court to provide an equitable remedy for his untimely habeas petition by either applying the doctrine of equitable tolling and allowing him to file an untimely petition, or — at the very least — remanding his case to the habeas court to assess whether equitable tolling of the statute of limitations period is appropriate. But for the reasons explained below, such a remedy would require this Court to look beyond the statutory habeas corpus scheme and create — for the first time in Georgia law — an equitable remedy that allows habeas petitioners to circumvent the statute of limitations provision enacted by the General Assembly. We decline to do so.

*(a) Equitable tolling in Georgia.*

Stubbs does not point to any Georgia precedent in which this

Court has endorsed or applied a doctrine of equitable tolling,[19] and we have found only one case in which this Court even *discusses* equitable tolling. See *State of Ga. v. Private Truck Council of America*, 258 Ga. 531, 533 (371 SE2d 378) (1988). In *Private Truck Council*, we analyzed equitable tolling in the context of a class action suit, but ultimately did not apply the doctrine under the circumstances of that case.[20] See id. We have identified no case —

---

[19] Black's Law Dictionary defines equitable tolling as:
1. The doctrine that the statute of limitations will not bar a claim if the plaintiff, despite diligent efforts, did not discover the injury until after the limitations period had expired, in which case the statute is suspended or tolled until the plaintiff discovers the injury. Equitable tolling does not require misconduct such as concealment by the defendant. 2. The doctrine that if a plaintiff files a suit first in one court and then refiles in another, the statute of limitations does not run while the litigation is pending in the first court if various requirements are met. Among those requirements are (1) timely notice to the defendant; (2) no prejudice to the defendant; and (3) reasonable and good-faith conduct on the part of the plaintiff. 3. A court's discretionary extension of a legal deadline as a result of extraordinary circumstances that prevented one from complying despite reasonable diligence throughout the period before the deadline passed.
Black's Law Dictionary (11th ed. 2019).

[20] There, we recognized, without providing further analysis or reasoning, that the "doctrine of equitable tolling provides that when a class action is filed, the statute of limitations for the action is tolled for all asserted members of the class during the pendency of the action." *Private Truck Council*, 258 Ga. at 533 (citing *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345 (103 SCt 2392, 76

and neither party points to one — where this Court has applied equitable tolling in the habeas context. Stubbs nevertheless argues that the limitations period should be equitably tolled because of the trial court's noncompliance with OCGA § 9-14-42 (d) and because of his habeas counsel's miscalculation of the filing deadline.

*(b) Federal precedent permitting equitable tolling of the statute of limitations in federal habeas cases does not control here.*

On the very last page of both Stubbs's primary and supplemental appellate briefs, Stubbs makes a cursory reference to *Holland v. Florida,* 560 U.S. 631, 645-646 (130 SCt 2549, 177 LE2d 130) (2010), the United States Supreme Court case in which a majority of that Court held that the statute of limitations period for the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") "may be tolled for equitable reasons." Indeed, the

---

LE2d 628) (1982)). But we rejected the application of an equitable tolling doctrine after concluding that the trial court erred in "holding the statute of limitations to [a tax refund statute was] tolled" where a "class action suit for a tax refund may not be maintained in Georgia" because "[t]he doctrine of equitable tolling protects only those claims asserted in the lawsuit from being barred by the applicable statute of limitations" and "does not apply to resurrect claims not asserted in the lawsuit which are time-barred." Id. at 534.

Supreme Court held that a petitioner seeking habeas under 28 USC § 2244 (d) is entitled to equitable tolling, but "only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." Id. at 649 (citation and punctuation omitted).

But the *Holland* majority did not base its holding on the text of AEDPA. See id. at 645-652. Instead, it based its conclusion on several "considerations," including: (1) that it had "previously made clear [in its case law] that a nonjurisdictional federal statute of limitations is normally subject to a rebuttable presumption in *favor* of equitable tolling" and that "equitable principles have traditionally governed the substantive law of habeas corpus"; (2) that AEDPA differed from precedent in which the presumption in favor of equitable tolling had been overcome; and (3) that equitable tolling does not undermine "AEDPA's basic purposes." Id. at 645-648 (citations and punctuation omitted; emphasis in original).[21]

---

[21] Justice Scalia, joined by Justice Thomas, dissented, arguing that when Congress has codified "a detailed scheme regarding the filing deadline that

Thus, even though the statute of limitations provision contained in OCGA § 9-14-42 (c) closely mirrors the statute of limitations provision in AEDPA, this Court is not bound to follow the United States Supreme Court's application of federal equitable tolling principles to the similarly worded federal statute because that decision was not guided by the same language, history, and context relevant to Georgia's statute.  Cf. *Elliott v. State*, 305 Ga. 179, 188 (824 SE2d 265) (2019) ("But decisions of the United States Supreme Court interpreting similar provisions [of the United States Constitution] will prove persuasive [to our interpretation of the Georgia Constitution] only to the extent that the Court's decisions actually were guided by [the] same language, history, and context."). That is especially so given that here — unlike in *Holland*, where the Supreme Court heavily relied on its precedent establishing and

---

addresses an array of contingencies" — as it did in AEDPA — "and specified the instances where it applies," the Court has "no warrant to extend [equitable tolling] to other cases" because "by specifying situations in which an equitable principle applies to a specific requirement, Congress has displaced courts' discretion to develop ad hoc exceptions." *Holland*, 560 U.S. at 661-662 (Scalia, J., dissenting) (emphasis in original).

applying a "rebuttable presumption in favor of equitable tolling" for "nonjurisdictional federal statute[s] of limitations," *Holland*, 560 U.S. at 645-646 (citation, punctuation and emphasis omitted) — we are aware of nothing in Georgia law that has established or applied a corollary presumption. That the legal background against which Georgia's habeas statute was enacted is not the same as the legal context of the federal habeas statute counsels against adopting the United States Supreme Court's approach in *Holland*, and we therefore decline to adopt a judicially created equitable tolling doctrine for Georgia's habeas statute.[22]

---

[22] In addition to claiming that the limitations period under OCGA § 9-14-42 (c) should be tolled because of the trial court's alleged failure to comply with subsection (d), Stubbs also claims that the statute should be equitably tolled because his habeas counsel miscalculated the filing deadline for his petition and because Stubbs was "diligent in seeking to avail himself as expeditiously as possible of his legal rights and remedies" after his petition was filed. But even the United States Supreme Court, which permits equitable tolling of the federal habeas limitations period, has rejected the argument that an attorney's mere miscalculation of the filing deadline warrants equitable tolling. See, e.g., *Holland*, 560 U.S. at 651-652 (noting that "a garden variety claim of excusable neglect, such as a simple miscalculation that leads a lawyer to miss a filing deadline does not warrant equitable tolling") (citations and punctuation omitted); *Butler v. Secretary, Fla. Dept. of Corrections*, 621 Fed. Appx. 604, 606 (11th Cir. 2015) (concluding that equitable tolling was not warranted where the petitioner could "only point to his counsel's miscalculation of the . . . limitations period" because "that sort of mistake does

*(c) Statutes and case law from other states permitting equitable tolling in habeas corpus cases do not mandate adoption of equitable tolling here.*

Stubbs also points to statutes pertaining to post-conviction relief from other states, arguing that each of those states allows for tolling of the limitations period for untimely post-conviction petitions and that Georgia should do the same. But that argument is unavailing: each state statute Stubbs cites provides for tolling through statutory exceptions or through qualifications that are expressly included in the statutory text. See, e.g., Colo. Rev. Stat. Ann. § 16-5-402 (including a *"justifiable excuse or excusable neglect"* clause in its statute as an explicit *"exception*[ ] to the time limitations specified" in its post-conviction statute of limitations provision) (emphasis supplied); 725 Ill. Comp. Stat. Ann. 5/122-1 (c) ("[N]o proceedings under [the statute] shall be commenced more than 6 months after the conclusion of proceedings in the United States Supreme Court," or "more than 6 months from the date for filing a

---

not warrant equitable tolling") (citation and punctuation omitted). Thus, even assuming for the sake of argument that equitable tolling of the sort recognized in *Holland* were available, Stubbs's alternative claim would still fail.

certiorari petition," "*unless the petitioner alleges facts showing that the delay was not due to his or her culpable negligence*") (emphasis supplied); Nev. Rev. Stat. Ann. § 34.726 (providing a statute of limitations for a "petition that challenges the validity of a judgment or sentence" "*[u]nless there is good cause shown for delay*" in filing an action and defining the parameters of when "good cause for delay exists" and what a petitioner must demonstrate to prove good cause to the court) (emphasis supplied). Georgia's habeas statute, by contrast, does not contain comparable statutory exceptions or qualifications to the limitations period for filing. See OCGA § 9-14-42. Because the text of each of the statutes from other states is materially different from OCGA § 9-14-42 (c), they offer little, if any, value in interpreting Georgia's statute — except to illustrate that legislatures know how to expressly provide for tolling when tolling is intended.

For the same reason, case law that allows for the tolling of those states' statutes of limitations is also unavailing because the appellate courts in those cases were interpreting state post-

conviction statutes that are materially different from Georgia's. See, e.g., *People v. Chavez-Torres*, 442 P3d 843 (Colo. 2019) (interpreting Colorado's "justifiable excuse or excusable neglect" statutory provision); *People v. Rissley*, 206 Ill. 2d 403, 418, 420 (795 NE2d 174) (2003) ("Our resolution of this issue turns upon the meaning of the term 'culpable negligence' contained in [the Illinois statute] . . . [and] [w]e continue to adhere to the definition [already] enunciated in [our precedent].").  See also *Brooks v. State*, 178 Ga. 784, 787 (175 SE 6) (1934) ("Cases from other [s]tates are founded upon their own statutes, which may or may not materially differ from statutes in this [s]tate.  In no event, however, do decisions from other states constitute controlling authority in this [s]tate.").

Stubbs also points to a procedure used by Louisiana appellate courts to argue that Georgia appellate courts should similarly enforce OCGA § 9-14-42 (d)'s mandate.  By Stubbs's account, Louisiana is the only other state that has a statutory provision that is textually similar to OCGA § 9-14-42 (d) and requires a trial court to inform a defendant of the post-conviction statute of limitations

period at sentencing, see La. Code Crim. Proc. Art. 930.8 (C) ("At the time of sentencing, the trial court shall inform the defendant of the prescriptive period for post-conviction relief either verbally or in writing."), and its courts enforce the notice provision by remanding a case when a trial court fails to inform a defendant of his post-conviction limitations period.[23] But every Louisiana case Stubbs cites involves a *direct appeal*, before any post-conviction petition has been filed and before any post-conviction limitations period has started to run, much less expired. See *State v. Davis*, 993 S2d 295, 306 (La. Ct. App. 5th Cir. 2008) (affirming the defendant's conviction and sentence but remanding the case "to the trial court with instructions" to "inform [the] defendant of the [post-conviction limitations] period" set forth by the Louisiana statute where the record showed that the "trial judge failed to advise [the] defendant of the two year prescriptive period for applying for post-conviction relief"); *State v. Gordon*, 928 S2d 689, 694-695(La. Ct. App. 5th Cir.

---

[23] Notably, Stubbs does not contend that Louisiana courts employ an equitable-tolling approach when a trial court does not comply with the notice required by La. Code Crim. Proc. Art. 930.8 (C).

2006) (affirming the defendant's conviction and remanding the case "with an order to the trial court to provide [the] defendant with written notice" of the post-conviction limitations period where the "trial court failed to notify [the] defendant of the two-year prescriptive period for filing an application for post-conviction relief"). Here, unlike in the Louisiana cases he cites, Stubbs's direct appellate review has concluded, and he has already filed a habeas petition seeking post-conviction relief. Given that Stubbs's procedural posture is materially different than that of the habeas petitioners he points to in Louisiana, that state's approach does not offer a solution for Stubbs's untimely petition.

Finally, Stubbs argues that the "tolling of the limitations period is warranted in the interests of justice." He points to case law from other states in which courts have allowed for the tolling of post-conviction limitations periods based on due process concerns, and urges this Court to follow suit.[24] But "[e]quity cannot supersede the

---

[24] For example, Stubbs points to *Whitehead v. State*, 402 SW3d 615, 631 (Tenn. 2013), but in *Whitehead*, the Tennessee Supreme Court "adopt[ed] the

positive enactments of the General Assembly." *Fullwood v. Sivley*, 271 Ga. 248, 251 (517 SE2d 511) (1999). And we decline to read into OCGA § 9-14-42 a remedy that stretches the statutory text beyond the General Assembly's enactment, thus rewriting Georgia's habeas laws by judicial order. Given the complete dearth of authority supporting the application of equitable tolling to the statute of limitations provision for habeas corpus petitions in Georgia, we decline to adopt that doctrine for the first time today.

*Judgment affirmed. Melton, C. J., Nahmias, P. J., and Blackwell, Boggs, Bethel, and Ellington, JJ., concur. Peterson, J., concurs in Divisions 1, 2, 3, and 5, and in judgment only in Division 4.*
DECIDED MARCH 13, 2020 --- RECONSIDERATION DENIED MARCH 25, 2020.
Habeas corpus. Hancock Superior Court. Before Judge Prior.

---

[equitable tolling] rule of *Holland*," which we have already rejected above. Stubbs also cites *Steele v. Kehoe*, 747 S2d 931 (Fla. 1999). But in *Steele*, the Florida Supreme Court extended its prior precedent — which held that "due process required the appointment of postconviction counsel" under certain circumstances and that a petitioner "might be entitled to file a belated motion for postconviction relief if the actions of her attorney had frustrated her intention to file such a motion in a timely fashion" — to hold that "due process entitles a prisoner to a hearing on a claim that he or she missed the deadline to file a [post-conviction] motion because his or her attorney had agreed to file the motion but failed to do so in a timely manner." Id. at 934 (citation and punctuation omitted). Georgia has no such precedent. See, e.g., *Gibson v. Turpin*, 270 Ga. 855, 857 (513 SE2d 186) (1999) ("It is well settled that there is no federal or state constitutional right to appointed counsel in Georgia habeas corpus proceedings.").

*Brian Kammer, Randall M. Edwards*, for appellant.

*George H. Hartwig III, District Attorney; Christopher M. Carr, Attorney General, Patricia B. Attaway Burton, Deputy Attorney General, Paula K. Smith, Senior Assistant Attorney General, Michael A. Oldham, Matthew B. Crowder, Assistant Attorneys General*, for appellee.